Bennie Lamar CLEVELAND *v.* STATE of Arkansas

CR 96-186                                    930 S.W.2d 316

Supreme Court of Arkansas
Opinion delivered September 23, 1996

*Alvin Schay*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is the third time that we have considered matters relating to appellant Bennie Lamar Cleveland's crimes committed on December 29, 1991. We first affirmed the judgments against Cleveland for capital murder, attempted capital murder, kidnapping, aggravated robbery, and theft of property. *See Cleveland* v. *State*, 315 Ark. 91, 106-A, 865 S.W.2d 285, 292 (1993). The United States Supreme Court, however, vacated our decision and requested that we reconsider the appeal in light of *J.E.B.* v. *Alabama*, 511 U.S. 127, 114 S.Ct. 1419 (1994). We did so and reversed the judgments and remanded the matter for a new trial. *See Cleveland* v. *State*, 318 Ark. 738, 888 S.W.2d 629 (1994). In July 1995, Cleveland was retried and convicted of first-degree murder, attempted capital murder, and theft of property. He was sentenced to life in prison for first-degree murder, twenty years for attempted capital murder, and five years on the theft-of-property charge, with all sentences to run consecutively. Cleveland now raises one issue on appeal: that the trial court erred in failing to declare a mistrial based on his *Batson* objection. We hold that there is no basis for reversal, and we affirm.

On December 29, 1991, at approximately 9:00 p.m., Wendall Moten got out of a car driven by Cleveland and entered Cash's Quick Check, a convenience store in McGehee. Moten later testified that his purpose was to determine whether Paula Easter, who was employed as a cook at Cash's, was there. Moten returned to the car, informed Cleveland that Easter was in the store, and shortly thereafter, Cleveland entered Cash's brandishing a loaded .22 caliber pistol. Moten accompanied him armed with a shotgun, which was fired into the wall. Easter, Michelle Nagle, who was a cashier at Cash's, and a customer named Willard Blackmon were in Cash's at the time.

Cleveland approached the booth where Easter, Nagle, and Blackmon were talking and said: "I told you that no police could keep me away from you." By the time the three realized what was happening, he fired a single shot at Michelle Nagle. The bullet entered her right arm and exited into her upper chest, which caused her to die almost immediately. The State's firearms expert

testified that, in his opinion, the shot was fired from a distance of two to four feet.

Willard Blackmon attempted to escape through a door at the rear of Cash's, but Cleveland prevented this by shooting Blackmon in the back and in the arm. Blackmon testified that he lay silent and still on the floor to feign death and avoid being shot again. He also stated that he saw Cleveland attempting to open the cash register with a key, but that Cleveland failed to do so.

Easter attempted to escape too but did not succeed. She testified that she ran to the kitchen to get hot grease to throw on Cleveland but that the grease was cold. She stated that she threw a trash can at him and then ran and hid in the store's cooler. Easter came out of the cooler after Cleveland told her that if she did not do so, she would never see her daughter again. Easter, Moten, and Cleveland then left Cash's and went to the car parked in front of the store. Cleveland returned to the store and came back to the car with Easter's purse and a metal box from Cash's that contained money and food stamps. The testimony was unclear as to whether he also returned with a .357 magnum pistol taken from the store.

After leaving Cash's, the three went to Little Rock, where they stopped for crack cocaine and later checked into a Motel 6. Moten left Easter and Cleveland and did not return. The next morning, Cleveland stole a truck and drove with Easter to Tennessee, Ohio, New York, and New Jersey. They were arrested in New Jersey. Easter told the arresting state trooper that she had been kidnapped. The trooper recovered two .22 caliber pistols from the truck and found Easter in possession of cocaine.

The pair were returned to Arkansas, and Cleveland was charged with capital felony murder or first-degree premeditated murder, attempted capital felony murder or attempted first-degree murder, aggravated robbery, kidnapping, and theft of property. On retrial, after reversal by this court, Cleveland defended himself *pro se*. He was convicted as set out above and sentenced.

For his sole point on appeal, Cleveland argues that the State violated the mandate of the Supreme Court in *Batson* v. *Kentucky*, 476 U.S. 79 (1986), by exercising six peremptory strikes against six black members of the *venire*. He contends that he made a *prima facie* showing of racial discrimination in jury selection, and that, with the exception of one of the six explanations, the prosecutor's reasons

"could well be characterized as implausible or fantastic." He concludes that the State did not meet its burden of providing racially neutral explanations.

The State initially emphasizes in its brief: (1) Cleveland is black; (2) the State used only seven of its ten peremptory strikes; (3) the resulting jury consisted of eight black and four white members; and (4) the two alternate jurors were black. The State further argues on appeal that no *prima facie* case was made and that a *prima facie* case is a necessary first step for mounting a *Batson* objection. *See Prowell v. State*, 324 Ark. 335, 921 S.W.2d 585 (1996); *Tucker v. State*, 313 Ark. 624, 855 S.W.2d 948 (1993). The State's argument, however, was never made to the trial court. When Cleveland objected to the six peremptory strikes by the prosecutor, the trial court immediately asked the prosecutor for a racially neutral explanation. The prosecutor proceeded to explain his strikes, and the trial court subsequently denied Cleveland's motion for a mistrial. The prosecutor never argued that a *prima facie* case was not made, and, thus, the issue was not developed below.

■ This court addressed this identical point in *Prowell v. State, supra,* when we stated:

> Although the defendant must first make a prima facie case that racial discrimination is the basis of a juror challenge, here, the prosecutor volunteered explanations for the challenges; the trial court made no rulings on whether a prima facie case was made. In *Hernandez v. New York*, 500 U.S. 352 (1991), the Court stated that once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot. *Id.; see also Sims v. State*, 320 Ark. 528, 900 S.W.2d 508 (1995).

324 Ark. at 345, 921 S.W.2d at 591. That is what occurred in the instant case. We hold that where no challenge to a *prima facie* case is waged and where the trial court proceeds to hear the prosecutor's race-neutral explanations and then denies the *Batson* motion, the issue of a *prima facie* showing is moot.

■ The relevant inquiry then becomes whether the trial court was correct in denying the mistrial motion based on the

reasons given. Our standard of review in such matters is whether the court's finding of satisfactory reasons was clearly against the preponderance of the evidence. *Prowell* v. *State, supra; Bradley* v. *State*, 320 Ark. 100, 896 S.W.2d 425 (1995). We, therefore, turn to the six challenges and individually examine the reasons given.

■ The prosecutor stated that he struck Jacqueline Wade because a deputy sheriff with the Desha County Sheriff's Department had seen her making eye contact and "mouthing words" to Cleveland during *voir dire*. Though the trial court, the prosecutor, and Cleveland all assumed in their discussions about *Batson* explanations that members of the *venire* were initially asked whether they knew Cleveland, this precise question does not appear in the record. Nevertheless, we conclude that this communication between a prospective juror and the defendant provided ample justification for a peremptory strike. The prosecutor challenged Clementine Martin because he had previously charged her with second-degree battery and believed that she was prejudiced against the State. Yvette Anderson was struck because she was seen by the prosecutor "mouthing words" to Cleveland when her group walked by Cleveland's table in the courtroom. The prosecutor argued that it was appropriate to strike Sharon Pickett because she knew members of Cleveland's family and the victim's family. And the prosecutor struck two ministers, Charles Taylor and Donnie Burns. Reverend Taylor was seriously concerned about sitting in judgment of others. Reverend Burns contended that it would be a hardship to serve on the Cleveland jury, vote to convict him, and then counsel other prisoners at the state penitentiary, including Cleveland. We find no fault in the trial court's acceptance of these reasons as satisfying the requirements of *Batson* v. *Kentucky, supra.*

■ As a final point, this court has noted that one of the best answers to a challenge of racial discrimination is to point to a jury that is comprised of members of the race in question. *See Heard* v. *State*, 322 Ark. 553, 910 S.W.2d 663 (1995); *Tucker* v. *State, supra.* In *Watson* v. *State*, 318 Ark. 603, 887 S.W.2d 518 (1994), we held that the State gave a sufficient racially neutral explanation after noting not only the composition of the jury, which contained black members, but also that the State had not used all of its peremptory strikes. *See also Tucker* v. *State, supra.* In the case at bar, the State used only seven of its ten peremptory strikes. When these two elements are combined with the explanations given by the prosecu-

tor at trial, this case must be affirmed.

The record in this case has been examined pursuant to Ark. S. Ct. R. 4-3(h), and no rulings adverse to Cleveland which constitute prejudicial error have been found.

Affirmed.

GLAZE, JJ., concurs. I concur. I disagree only with the conclusion that this court on review cannot decide the *prima facie* issue and, therefore, reach the same result as the trial court, but for a different reason. Newbern, J., joins in this concurrence.