Rodney BRAGG *v.* STATE of Arkansas

CR 96-820                                   946 S.W.2d 654

Supreme Court of Arkansas
Opinion delivered May 27, 1997

*Honey & Honey, P.A.*, by: *Charles L. Honey*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Rodney Bragg appeals the judgment of the Nevada County Circuit Court convicting him of delivery of a controlled substance (cocaine), a Class Y felony, in violation of Ark. Code Ann. § 5-64-401 (Repl. 1993), sentencing him to life imprisonment, and ordering him to pay a fine of $25,000. We have jurisdiction of this appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (as amended by *per curiam* July 15, 1996). Appellant raises five points for reversal. We find no error and affirm.

## I.   Facts

The testimony presented at trial reveals the following facts. On March 26, 1993, Agent Keith Ray, an undercover officer for the South Central Drug Task Force, and Mark Smith, a confidential informant, went to the residence of John Noland in Prescott for the purpose of purchasing cocaine. Agent Ray told Noland that he wanted to buy $50 worth of crack cocaine and Noland indicated that he had someone there who could help him. Noland then led Agent Ray to the kitchen door, where he instructed Ray to wait. Agent Ray observed three men sitting at the kitchen table with a large amount of what appeared to be crack cocaine. After Noland had spoken to one of them, that man got up from the table and came to where Agent Ray was standing and asked Ray what he wanted. Again, Agent Ray indicated that he wanted to buy $50 worth of crack cocaine. The man then handed Agent Ray one piece of the rock-like substance and Ray paid him $50.

After they had left the residence, Agent Ray described for Smith, who was not present during the drug transaction, the man from whom Ray had purchased the drugs. Smith told Agent Ray that the man may have been Noland's cousin, Rodney Mitchell. When Agent Ray later viewed photographs of Mitchell, however, he indicated that Mitchell was not the person who sold him the cocaine. Agent Ray was unable to identify the suspect for approximately one year.

On March 1, 1994, in Clark County Agent Ray conducted another undercover drug transaction, this time with another informant, Steve Krite. Agent Ray gave Krite $125 and Krite purchased several rocks of crack cocaine from a man he knew as "Rodney." During the transaction, Agent Ray positioned his vehicle where he could view the delivery, and he was able to see the man selling the cocaine. Recognizing the man as the suspect in the 1993 drug transaction, Agent Ray ran a check on the vehicle license number, and it came back to Appellant, Rodney Bragg. Agent Ray later contacted the Nevada County Sheriff's Office and obtained a photograph of Appellant, who Agent Ray positively

identified as the individual who sold him the crack cocaine on March 26, 1993.

## II.   Composition of the Jury and Venire

For his first two points for reversal, Appellant challenges the composition of both the petit jury that heard his case and the venire from which the jury was chosen. Appellant argues that the jury venire was not representative of the overall population of Nevada County, and that the State had systematically excluded black persons from the jury in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

### A.   Jury Venire

At trial, after the petit jurors had been selected but before they had been sworn, Appellant moved to quash the jury venire because it was not representative of a fair cross-section of the community in that the number of black persons on the venire was not proportionate to the percentage of black persons residing in Nevada County.

The Equal Protection Clause is not violated unless the State has engaged in the purposeful or deliberate denial to blacks, on the basis of their race, of participation in the administration of justice by selection for jury service. *Danzie v. State*, 326 Ark. 34, 930 S.W.2d 310 (1996). The appellant carries the burden of proving the systematic exclusion of black jurors from the venire. *Id.* In order to establish a prima facie violation of the fair-cross-section requirement of the Sixth Amendment, an appellant must show the following: (1) The group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Id.* at 42–43, 930 S.W.2d at 314–15 (citing *Duren v. Missouri*, 439 U.S. 357 (1979)). This test requires a fair and reasonable representation of the distinctive group in every venire from which juries are

selected, not just the particular venire summoned at a defendant's trial. *Id.* Once the appellant makes a prima facie showing of racial discrimination, the burden shifts to the State to justify its procedure. *Id.*

■ Although blacks clearly represent a distinctive group in the community, Appellant has failed to offer any proof concerning the composition of the population and the number of registered voters in Nevada County. Furthermore, Appellant has not provided us with any proof as to the composition of the jury venire called in his case, let alone the entire jury pool or master list from which each venire is chosen. Without such proof, Appellant has failed to make a prima facie showing of racial discrimination in the jury-selection process. We therefore conclude that the trial court did not err in denying Appellant's motion to quash the jury venire.

### B. Petit Jury

Appellant next argues that the State systematically excluded three black persons from the jury in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The record reflects that there were eleven white persons and one black person seated on Appellant's jury.

■ The Equal Protection Clause forbids prosecutors from challenging potential jurors solely on the basis of race. *Batson*, 476 U.S. 79; *Bell v. State*, 324 Ark. 258, 920 S.W.2d 821 (1996). In order to prevail on a *Batson* argument, a defendant must first make a prima facie case that racial discrimination is the basis of a juror challenge. *Bell*, 324 Ark. 258, 920 S.W.2d 821. A prima facie case may be established by: (1) Showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) demonstrating total or seriously disproportionate exclusion of blacks from the jury, or (3) showing a pattern of strikes, questions, or statements by a prosecutor during *voir dire*. *Id.* One of the best answers to a challenge of racial discrimination is to point to a jury that is comprised of any members of the race in question. *Cleveland v. State*, 326 Ark. 46, 930 S.W.2d 316 (1996). Here, the State made no challenge to Appellant's prima facie case of dis-

crimination and proceeded to give its race-neutral explanations. The relevant inquiry is, thus, whether the trial court was correct in denying the motion based on the reasons given by the State. *Id.*

At trial, the prosecutor explained that he had chosen to strike Charles Toliver because he had prosecuted Toliver several times in the past for driving while intoxicated, in which Toliver was represented by Appellant's counsel, Mr. Honey, and because Toliver stated that he had served twelve years in the National Guard with John Noland, a potential accomplice to the charges against Appellant. Additionally, the prosecutor stated that he had also prosecuted Toliver's son in the past.

Similarly, the prosecutor stated that he had chosen to strike Queen Esther Hayden because he had prosecuted her son, who was ultimately convicted of the charges and imprisoned, as well as two of her grandsons, one who was still serving time in prison and the other who was in the custody of the State's juvenile facilities. The prosecutor indicated that he had also chosen to strike Hayden due to her admitted close personal relationship with Fanae Noland, wife of John Noland.

Finally, the prosecutor stated that he had chosen to strike James Edward Cole because he had prosecuted Cole's stepson a few years before on charges of rape and carnal abuse, and the stepson was convicted and sentenced to prison for the charges. The prosecutor stated further that while Cole's stepson was serving his prison sentence, working as a trustee in the Nevada County jail, he left the jail and went to the home of a convicted drug dealer and purchased some crack cocaine.

Additionally, the prosecutor informed the trial court that had another potential juror, Clara Taylor, a white person, not been excused for cause, he would have used a peremptory challenge to strike her due to the fact that he had recently prosecuted her daughter.

After hearing argument from both sides, the trial court found that there was a reasonable and rational basis for the State's decisions to strike all three jurors and denied Appellant's motion. Our standard of review is whether the trial court's findings were

clearly against the preponderance of the evidence. *Cleveland*, 326 Ark. 46, 930 S.W.2d 316; *Bell*, 324 Ark. 258, 920 S.W.2d 821. We conclude that the State provided sufficient racially neutral explanations as to its use of the three peremptory challenges and, as such, the trial court was correct in denying Appellant's motion to quash the jury.

### III.  Hearsay

For his third point for reversal, Appellant argues that the trial court erred in allowing into evidence three hearsay statements made by Agent Ray. The State contends that the statements were not hearsay because they were not offered as evidence of the truth of the matter asserted. Hearsay is any statement made by an out-of-court declarant that is repeated in court by a witness and is offered into evidence for the truth of the matter asserted. *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), *cert. denied*, 116 S. Ct. 1861 (1996). Hearsay evidence is generally inadmissible except as provided by law or by the rules of evidence. *Id*. We will not reverse a trial court's determination as to the admissibility of hearsay unless the appellant can demonstrate an abuse of discretion. *Id*.

The first challenged statement concerns Agent Ray's testimony about information supplied to him by another police agent. In response to the prosecutor's question as to what led the agent to Noland's residence, Agent Ray stated:

> Another agent that works for us, Mr. Wiggins, had purchased fifty dollars ($50.00) worth of crack cocaine from Mr. Noland's —

Appellant's counsel objected, but the trial court ruled that the information was admissible for the purpose of explaining what led Agent Ray to the residence in the first place.

The second challenged statement concerns Agent Ray's testimony about information supplied to him from Noland once the agent and the informant arrived at Noland's house. In response to the prosecutor's question about what had happened upon arrival at Noland's house, Agent Ray stated in pertinent part:

> I went inside the door, Mr. Noland and Mr. Smith were standing there talking, Mr. Noland asked me what I was looking for referring to the drugs, and I told him I was looking for fifty dollars ($50.00) worth of crack cocaine. He told me that he had a guy —

Appellant's counsel objected as to the statement of Noland. The prosecutor argued that because Noland would have been an accomplice to the drug transaction, it was a statement against Noland's penal interest and was admissible as an exception to the hearsay rule. On appeal, the State asserts that the statement by Noland was admissible, not for the truth of what Noland said, but for the purpose of showing the basis for Agent Ray's actions, particularly as to why Ray went with Noland to the kitchen where he ultimately conducted the drug transaction with Appellant. The trial court ruled that the evidence was admissible "under the hearsay exception." Agent Ray then proceeded to state that Noland had advised him that, "he had a subject there that could serve myself."

The third and final challenged statement concerns Agent Ray's testimony concerning the 1994 Clark County drug purchase from the person that the informant, Steve Krite, knew as "Rodney." Appellant's counsel objected to the testimony on the ground that Krite's identification of Appellant as the person he referred to as "Rodney" was hearsay. The prosecutor responded that the testimony was not offered for the truth of the matter asserted, only to show why the agent took the actions he did on that date. The trial court overruled the objection.

■ This court has repeatedly recognized that similar out-of-court statements are not prohibited by the hearsay rule if they are not offered for the truth of the matter asserted in the statement. In *Martin v. State*, 316 Ark. 715, 875 S.W.2d 81 (1994), this court held that an out-of-court statement is not hearsay if it is offered to show the basis of an officer's action. In that case, the officer testified to information he had received from an informant, who had wished to remain anonymous, concerning the identity of a robbery suspect's truck, upon which he had relied in broadcasting a description to other police units. The officer testified further that his broadcast alerted another officer to the suspect truck,

which, in turn, caused that second officer to inform a third officer to be on the lookout for the truck. This court held that because the first officer's testimony was provided in order to show the basis for his actions, the trial court did not err in admitting the testimony.

Similarly, in *Hamm v. State*, 304 Ark. 214, 800 S.W.2d 711 (1990), the alleged hearsay testimony involved an officer's receipt of information from other officers regarding the description of an automobile. This court upheld the admission of the officer's testimony, as it was merely offered to show that the officer acted on the description of the car given to him by the other officers.

In *Johnson v. State*, 313 Ark. 308, 854 S.W.2d 336 (1993), the defense made a hearsay objection when the police officer testified concerning information received from a citizen. This court found no error since the officer's testimony was not offered for the truth of the citizen's statement, but, instead, was offered to show what information the police acted upon.

Here, as to the first statement concerning another agent's purchase of crack cocaine from Noland's house, we are persuaded by the State's reasoning that the information was not offered to demonstrate whether the other agent had made such a purchase; rather, it was elicited from the witness for the purpose of showing why Agent Ray and the informant went to Noland's house in the first place. Moreover, Appellant cannot demonstrate that he was prejudiced by the admission of this statement due to the fact that he was not even implicated in the sale to the other agent. We will not reverse the trial court's ruling as to such evidentiary matters absent a demonstration of prejudice. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702, *cert. denied*, 117 S. Ct. 246 (1996).

As to the second statement concerning Noland's remark to Agent Ray that he had someone there who could help Ray in his desire to purchase cocaine, we are similarly persuaded that the statement was admissible for the purpose of showing the basis for the agent's actions. Furthermore, Appellant has failed to demonstrate how this evidence prejudiced his case, and we can see no such prejudice. This is particularly evident considering the fact that Agent Ray went on to testify that he purchased the drugs

from Appellant at Noland's house, after Noland had led him to the kitchen where Noland had a brief discussion with Appellant immediately before Appellant sold the drugs to the agent.

As to the final allegation of inadmissible hearsay, we conclude that the State is correct in its assertion that Krite's identification of the suspected drug dealer as "Rodney" was merely offered for the effect it had on the listener, Agent Ray, as an explanation of why Ray took the actions he did with regard to the subsequent drug transaction. Again, as with the first two statements, Appellant has failed to make a showing of prejudice, due to the fact that regardless of whether the suspect's name was "Rodney," Agent Ray positively identified Appellant as the drug dealer during that transaction.

Based upon the foregoing reasons, we thus conclude that the trial court did not abuse its discretion in admitting all three of the statements.

### IV. Prior Arrest and Bad Acts

For his fourth point for reversal, Appellant argues that the trial court erred in allowing Agent Ray to testify concerning the 1994 drug transaction in Clark County and in allowing the State to cross-examine him about a prior arrest in Nevada County. The State argues that such evidence was admissible pursuant to A.R.E. Rule 404(b) because it was relevant to the issue of Appellant's identity.

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence offered under Rule 404(b) must be independently relevant, thus having a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Larimore v. State*, 317 Ark. 111, 123, 877 S.W.2d 570,

576 (1994) (quoting A.R.E. Rule 401). Evidence may be independently relevant if it shows the identity of the perpetrator. *Carter v. State*, 295 Ark. 218, 748 S.W.2d 127 (1988). Even if the evidence is relevant, however, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.*; A.R.E. Rule 403. As to the requirement that the probative value not be substantially outweighed by the danger of unfair prejudice, we accord the trial judge wide discretion in balancing the conflicting interests. *Carter*, 295 Ark. 218, 748 S.W.2d 127. On appeal, we will not disturb the trial court's decision to admit or reject evidence submitted under Rule 404(b) absent a showing of manifest abuse of discretion. *Larimore*, 317 Ark. 111, 877 S.W.2d 570.

## A.    Subsequent Drug Transaction

The record demonstrates that Appellant initially objected to the testimony concerning the 1994 drug transaction on the ground that it was irrelevant. The State responded that the testimony was relevant as to Agent Ray's identification of Appellant as the person from whom he had purchased drugs in 1993. The State indicated that the testimony was especially relevant because the defense had put the jury on notice that it challenged the agent's identification of Appellant. Appellant's counsel then responded by arguing that the testimony concerning what Krite actually purchased from Appellant was not relevant to the issue of identification. The trial court overruled the objection, and Agent Ray continued his testimony:

Q:    And what was given to you by Mr. Krite, Mr. Ray?
A:    Several rocks of crack cocaine.
Q:    Alright, now, after this transaction took —

Appellant counsel's then moved for a mistrial on the ground that the testimony was so prejudicial to Appellant's case that the jury could not possibly view the rest of the evidence against him fairly. The trial court denied the motion.

We are not persuaded by Appellant's argument that the trial court abused its discretion in permitting the testimony of the 1994 drug transaction. An element that must be proved in every case is that the person who stands before the court in the position of the defendant is the one whom the information

accuses and to whom the evidence relates. *Green v. State*, 310 Ark. 16, 832 S.W.2d 494 (1992). The identity of the person who sold the drugs to Agent Ray was a key issue, in light of Appellant's challenge to the agent's identification of him as the person who sold the drugs to the agent from Noland's residence in 1993. The relevance of the evidence therefore went to the issue of identification, as well as to Agent Ray's explanation as to why he did not arrest Appellant for over one year. Notwithstanding the fact that the testimony may have been prejudicial to Appellant, we cannot say that its probative value was substantially outweighed by the danger of *unfair* prejudice.

█ The testimony was additionally relevant under Rule 404(b) to show Appellant's intent or lack or absence of mistake. In *Scroggins v. State*, 312 Ark. 106, 848 S.W.2d 400 (1993), the appellant wanted the trial court to delete a portion of a taped interview, which referred to an informant's previous purchase of drugs from the appellant. This court held that because the appellant was charged with delivery of a controlled substance in exchange for money, the testimony was admissible to show his intent pursuant to Rule 404(b). Here, Appellant was likewise charged with delivery of a controlled substance and, as such, the testimony of the 1994 drug transaction was relevant to show Appellant's intent or lack of mistake as to the hand-to-hand delivery to Agent Ray in 1993.

█ █ We are equally unpersuaded that the trial court erred in refusing to grant Appellant's motion for mistrial. Trial courts are granted wide latitude of discretion in granting or denying a motion for mistrial, and we will not reverse the court's decision absent an abuse of that discretion or manifest prejudice to the complaining party. *Brown v. State*, 320 Ark. 201, 895 S.W.2d 909 (1995). Among the factors we consider on appeal is whether the defendant requested a cautionary instruction or admonition to the jury. *Id.* The failure of the defense to request an admonition may negate the mistrial motion. *Boyd v. State*, 318 Ark. 799, 889 S.W.2d 20 (1994). It is also true that the failure to give an admonition or cautionary instruction is not error where none is requested. *Id.* "The bottom line on mistrials is that the incident must be so prejudicial that the trial cannot, in fairness, continue."

*Id.* at 804, 889 S.W.2d at 22. Based upon our conclusions above, as well as the fact that Appellant did not request a cautionary instruction to the jury, we cannot say that the admission of Agent Ray's testimony deprived Appellant of a fair trial.

### B. *Prior Arrest*

On cross-examination, the State asked Appellant whether he had been arrested in Nevada County prior to March 1994. Appellant's counsel objected on the ground that the question was improper because Appellant had not been convicted as a result of the arrest. The trial court ruled that because Agent Ray had testified that he had viewed a photograph of Appellant, the testimony was admissible for that purpose. Appellant then confirmed that he had been arrested in Nevada County prior to March 1994, and that a photograph was taken of him at that time. The State did not inquire further into Appellant's prior arrest.

We note at the outset that Appellant did not challenge the admission of this evidence pursuant to Rule 403. Hence, we do not attempt to balance the probative value of the evidence against the potential for unfair prejudice. Appellant argues on appeal that the testimony was inadmissible pursuant to A.R.E. Rule 609 and Rule 404(b).

Rule 609 provides for the use of prior convictions as a means for impeaching the credibility of a witness, who places his credibility in issue by the act of taking the witness stand and giving testimony. Here, the evidence of Appellant's prior arrest was not used by the prosecution in an attempt to impeach Appellant's credibility and, thus, Rule 609 is inapplicable to this issue.

Rule 404(b) is, however, applicable to this issue, albeit unfavorably to Appellant's position. As previously stated, the identity of the perpetrator in this case was a key issue. This became particularly evident after Appellant testified on direct examination that he had never seen Agent Ray before the day he was arrested in July 1994. The testimony of Appellant's prior arrest in Nevada County was relevant to the issue of Agent Ray's ability to have identified Appellant from a photograph provided by the Nevada County Sheriff's Office. For the reasons outlined above pertaining to the testimony of the 1994 drug transaction,

we cannot say that the trial court abused its discretion in allowing testimony of Appellant's prior arrest for the purpose of establishing Agent Ray's identification of Appellant as the person who sold drugs to him.

## V. Directed Verdict Motion

For his final point for reversal, Appellant argues that the evidence was insufficient to convict him of the charge. At the conclusion of the State's case, Appellant's counsel stated: "Judge, show me on the records [sic] as having made the motion for directed verdict based on insufficient testimony." Similarly, at the conclusion of all the evidence, Appellant's counsel stated: "Show my motion for directed verdict renewed[.]" We do not reach the merits of this issue as Appellant's motions below were not sufficiently specific to apprise the trial judge of the alleged deficiencies in the evidence.

 "We draw a bright line and hold that a motion for a directed verdict in a criminal case must state the specific ground of the motion." *Walker v. State*, 318 Ark. 107, 109, 883 S.W.2d 831, 832 (1994). Thus, in order to preserve a sufficiency argument for appeal, proof of the element of the crime that is alleged to be missing must be specifically identified in a motion for directed verdict, or the issue is deemed not preserved for appeal. A.R.Cr.P. Rule 33.1; *Webb v. State*, 327 Ark. 51, 938 S.W.2d 806 (1997); *Lovelady v. State*, 326 Ark. 196, 931 S.W.2d 430 (1996). Additionally, while it is true that Ark. Sup. Ct. R. 4-3(h) requires us to review the record for error in life and death cases, this review presupposes that a proper objection was made at trial. *Webb*, 327 Ark. 51, 938 S.W.2d 806. Here, Appellant's failure to make a specific motion for directed verdict precludes our review of the sufficiency of the evidence on appeal.

## VI. Rule 4-3(h) Certification

In accordance with Rule 4-3(h), the record has been reviewed for adverse rulings objected to by Appellant but not argued on appeal, and no such errors were found.

Affirmed.

ARNOLD, C.J., not participating.