Cite as 2019 Ark. App. 419

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CR–18–793

| | |
|---|---|
| | **Opinion Delivered:** September 25, 2019 |
| MICHAEL JENKINS | |
| APPELLANT | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. 54CR-16-145] |
| V. | |
| | HONORABLE RICHARD L. PROCTOR, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Michael Jenkins appeals after he was convicted by a Phillips County Circuit Court jury of sexual assault in the first degree. He was sentenced to serve 180 months in the Arkansas Department of Correction and ordered to pay a $15,000 fine. On appeal, appellant contends that (1) the trial court erred when it denied his motions for mistrial and (2) the trial court erred by not intervening when the prosecutor made improper comments during closing argument. We affirm.

### I. *Relevant Facts*

Appellant was A.S.'s pastor at The Church of the Living God in Helena–West Helena. Appellant and A.S. had been exchanging multiple texts for a significant period. Appellant additionally had given A.S. money and had bought A.S. hair extensions, shoes, and other presents. On June 17, 2017, A.S.'s parents dropped her off at appellant's home to play basketball. According to A.S., while she was there, appellant penetrated her vagina

with his penis while wearing a condom. A.S. was only fifteen years old at the time. As such, appellant was charged with sexual assault in the first degree.

In a pretrial hearing, appellant objected to the State's being able to use approximately 700 text messages that were allegedly exchanged between appellant and the victim on the basis of Arkansas Rules of Evidence 402 and 403. After hearing oral argument, the trial court denied appellant's motion in limine, finding that the text messages exchanged after April 2016 were relevant and probative. Additionally, the trial court acknowledged that there might be other issues that could preclude the text messages from being introduced into evidence but noted that it would rule on any further objections as they came up at trial.

On the day of trial and before the State made its opening statement, appellant objected to the State's being able to show or read any of the text messages in its opening statement. Defense counsel explained that the messages had not been introduced into evidence and thought that the trial court would ultimately rule that they were inadmissible later during the trial. The State responded that the opening statement was an appropriate time for it to explain the evidence it anticipated would be introduced at trial. The State acknowledged that it was taking a risk by mentioning the text messages because the text messages could later be deemed inadmissible, but it equated the risk to telling a jury about a murder weapon in an opening statement in a murder trial. The State further explained that the text messages were a substantial part of its case and would corroborate the victim's testimony. The trial court ultimately ruled as follows:

> Alright, these text messages are subject to authentication and the Court rules that the messages are thought to be probable, probative and relevant by the State.

Since they've not been admitted, they may be talked about during the opening, but may not be shown or published until they are admitted.

During the State's opening statements, appellant made multiple objections and motions for mistrial. However, the trial court denied appellant's motions for mistrial.

After opening statements, appellant objected to the State's presenting the testimony of John Blackmon with the Arkansas State Police because Mr. Blackmon's name and address had not been disclosed to the defense during discovery. Mr. Blackmon apparently was responsible for extracting the text messages exchanged on appellant's and the victim's phones and creating the extraction report that contained the reproduction of those messages. The trial court agreed with appellant and ruled that Mr. Blackmon would not be permitted to testify, and the extraction report was inadmissible without his testimony.

James Morgan, A.S.'s stepfather, testified that he and his family had attended appellant's church in West Helena. He allowed appellant to pick up and drop off A.S. from his home for various church-related activities. Mr. Morgan testified that A.S. idolized appellant and would frequently talk about him. Mr. Morgan explained that A.S. had not changed her account of the incident and that she had not given him any reason to doubt her account.

Corporal Cynthia Gamble with the Helena-West Helena Police Department testified that she had received a complaint of child sexual abuse on July 20, 2016. Corporal Gamble testified that she was in charge of the investigation and that A.S. had been interviewed at a forensic center for abused children. She explained that A.S.'s description of the inside of appellant's trailer accurately matched what Corporal Gamble observed inside the trailer during her investigation. Corporal Gamble testified that to her knowledge, A.S. has never

3

changed her story. Appellant consented to the search of the trailer and to his cell phone. However, no relevant DNA evidence was found. Regarding appellant's cell phone, she submitted it through the appropriate chain of custody to Mr. Blackmon for further examination.

Tasha Morgan, A.S.'s mother, testified similarly to Mr. Morgan. She explained that before the sexual assault, A.S. had spoken highly of appellant and stated that she trusted him. Mrs. Morgan admitted, however, that she did have a disagreement with appellant over his relationship with A.S. before the sexual assault. Approximately a year before the sexual assault, Mrs. Morgan confronted appellant and asked him whether he had been "fondling around" with A.S. He told her that he would never do anything to a child, and she accepted his answer. Mrs. Morgan found out about the sexual assault a few days after it had happened.

A.S. testified that she had been fifteen years old at the time of the sexual assault and that she was sixteen years old at the time of the trial. A.S. testified that over time, she noticed that appellant had been paying special attention to her. He would give her money and buy her things. She would text appellant nearly every day, and he later kissed her. A.S. testified that in one text, appellant told her that he would leave his wife for her if she was eighteen years old. A.S. testified that after her stepfather dropped her off at appellant's trailer on June 17, 2016, appellant touched her on her thigh and started rubbing on her. He subsequently penetrated her vagina with his penis while wearing a condom.

M.B. was A.S.'s fourteen-year-old good friend. M.B. explained that A.S. had entrusted her with A.S.'s secret that appellant had been texting A.S. M.B. saw one of the text messages, which said, "If you were 18 I would leave my wife for you."

4

Vince Wilson testified that he was at appellant's house installing DirectTV on June 17, 2016, around 10:00 a.m. He did not see anyone else at the home when he got there. However, he noticed two girls playing basketball outside when he left at noon.

Francine Hawkins testified that she knows appellant and is a member of appellant's church. Ms. Hawkins explained that A.S. had several conversations with her about the incident. Ms. Hawkins further testified that A.S. admitted to her on one occasion that appellant had not raped her. However, A.S. denied Ms. Hawkins's account when she was recalled on rebuttal. Instead, A.S. testified that she did, in fact, tell Ms. Hawkins that appellant had raped her, and Ms. Hawkins told her that she wished she had been there to stop him.

The jury convicted appellant of sexual assault in the first degree, and this appeal followed.

## II. *Motion for Mistrial*

Appellant argues that the trial court abused its discretion when it denied his motions for mistrial. A mistrial is an extreme remedy that should not be declared unless there has been error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *Britton v. State*, 2014 Ark. 192, 433 S.W.3d 856. The trial court has wide discretion in granting or denying a motion for mistrial, and absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Britton*, *supra*. Among the factors we consider on appeal is whether the defendant requested a cautionary instruction or an admonition to the jury. *Bragg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997). Our supreme court has held that a cautionary

5

instruction or an admonition to the jury can make harmless any prejudice that might occur. *See Green v. State*, 2013 Ark. 497, 430 S.W.3d 729. A mistrial is proper only if an error is beyond repair and cannot be corrected by any curative relief. *McClinton v. State*, 2015 Ark. 245, 464 S.W.3d 913. The failure of the defense to request an admonition may negate the mistrial motion. *Bragg, supra.* It is also true that the failure to give an admonition or a cautionary instruction is not error when none is requested. *Id.* "The bottom line on mistrials is that the incident must be so prejudicial that the trial cannot, in fairness, continue." *Boyd v. State*, 318 Ark. 799, 804, 889 S.W.2d 20, 22 (1994).

The first motion for mistrial raised in appellant's brief on appeal was made during the State's opening statement. Initially, appellant objected when the State told the jury that appellant's phone number was saved in the victim's phone as "Dad" and that there was a text message that read, "Come live with me." After a lengthy discussion with defense counsel and the State, the trial court clarified its prior ruling regarding how the State could discuss the text messages in its opening statement. The trial court explained that the State could tell the jury what it anticipated the evidence would show at trial, including references to the various text messages, but that it could not simply read the text messages to the jury. Thereafter, the State made the following comments to the jury:

> Okay, so starting in April of 2016 we've got a series of text messages between fifteen (15) year old [A.S.] and sixty-seven (67) year old fellow that's her preacher.
>
> (Reviewing documents) Now, starting with stuff like that he wants her to come live him. And she's saying that she can't.
>
> And I want, you're going to get to see these through the course of the trial, so you're going to see repeatedly throughout these text messages that the defendant would periodically and repeatedly tell her to "delete," "delete now."

And a, she'd respond by saying "I understand" or something similar to that, to, to cover up these texts.

You're going to see several examples of the, the, the sexual nature of the relationship on the, with the messages between the two about don't, "not playing with my heart," "playing with yours."

And, as I said, you know, that some of them are appalling about "coming to church with my kiss." Or talking, he's talking about her "juicy lips." Referring to her as "sugar."

"You're my lady," "babe," "sweet thing."

There are several references in the texts about "I love you, "I love you, too."

There's, there's referencing in the text with him inquiring about her sex life and whether or not she's sexually active.

Getting a kiss.

And, as I said earlier, there, there's references in here about "I'm ordering my hair extensions on line tomorrow so?" "Let me know," he responds, "Let me, let me know. I'm fine with it."

There are texts about him thinking about her.

"You are my world."

A message from her, from him to her, "I would want to be with you."

She responds, "You got a ho wife."

"I would leave for you if you were older."

"No, you wouldn't."

"Good morning, NuNu. Your lips is like candy."

"Just checking in on you, I got money in my pocket. I want you to have some if you need it."

"It's so good loving somebody when somebody loves you back. I know."

"You my boo-boo."

At that point, defense counsel moved for a mistrial, arguing that the State had violated the trial court's ruling that it "couldn't talk specifically," that defense counsel just "let him keep talking just cause he's committing reversible error," and that the State read more than the handful of texts it had previously indicated it would during its discussion with the trial court. Defense counsel further objected to the State being allowed to read any further text messages. The trial court overruled appellant's objection and denied the motion for mistrial. The trial court commented that the State "technically" did not read the text messages but described excerpts that it was going to introduce at trial. The trial court further ruled that it did not think the State violated its ruling and that if the State continued to discuss the text messages, it would "see what happens."

Appellant argues on appeal that the trial court erred in denying his motion for mistrial because the trial court had ruled that the State could not read the text messages to the jury and because the State ultimately was unable to introduce the extraction report with the verbatim text messages at trial. However, it is important to note that during the opening statements, the trial court had ruled that the text messages exchanged after April 2016 were admissible and that the State was able to discuss the text messages during opening statements in referencing the evidence it anticipated to introduce at trial. It was only after opening statements that the trial court excluded Mr. Blackmon's testimony and the extraction report. Further, after reading the lengthy dialogue that occurred after defense counsel moved for a mistrial during opening statements, the trial court found that the State had not violated its ruling, commenting that the State "technically" did not read the text messages but stated excerpts that it was going to introduce at trial.

A new trial or other relief will not automatically be granted because counsel has referred to matters in opening statements that are not admitted into evidence. In *Johnson v. State*, our supreme held that the trial court did not err in denying a mistrial when there was no suggestion that the prosecutor acted in bad faith nor did defense counsel request that the jury be told that opening statements are not evidence. 258 Ark. 560, 528 S.W.2d 367 (1975). "It frequently happens that an attorney, in good faith, goes too far in telling the jury what he expects the testimony to show. Obviously a mistrial cannot be declared every time an opening statement is challenged by the other side." *Foots v. State*, 258 Ark. 507, 509, 528 S.W.2d 135, 136 (1975).

The same is true here. The State, in good faith, told the jury that it anticipated numerous text messages exchanged between appellant and the victim would be introduced into evidence. Even though the content of some of the text messages was subsequently admitted through the testimony of both the victim and M.B., the extraction report was later excluded. Moreover, another relevant factor here is that defense counsel did not request the trial court to provide the jury with any limiting instruction that the prosecutor's statements were not evidence. *See Bragg*, *supra*. Nevertheless, at the conclusion of the trial, the trial court specifically instructed the jury that "[o]pening statements, remarks during trial, and closing arguments of the attorneys are not evidence but are made only to help you in understanding the evidence and applicable law. Any argument, statements, or remarks of the attorneys, having no basis in the evidence, should be disregarded by you." Our supreme court has previously held that a similar admonition to the jury that statements of counsel are not evidence cured any possible error. *See Barnes v. State*, 346 Ark. 91, 55

9

S.W.3d 271 (2001). Thus, we agree with the State that the trial court did not abuse its discretion in denying appellant's motion for mistrial.

The second motion for mistrial raised in appellant's brief on appeal was made during the direct examination of A.S. During A.S.'s testimony, the State asked her about the content of the text messages. After appellant objected, the State responded that regardless of whether John Blackmon had been excluded as a witness, A.S. could authenticate the text messages herself since she had personal knowledge about them, and anything said in the text messages by appellant were an admission. The trial court ruled that it would not allow the introduction of the extraction report without a proper authentication, which A.S. could not do. However, it ruled that A.S. could "testify if she received communications from the defendant and what those communications were. If she can remember."

A.S. testified about some of the content in the text messages. The State also asked A.S. whether the police ever asked to see her phone. After she responded that it did to "get the messages off because I deleted them," the State inquired whether she had "seen those messages." At that point, appellant objected to the question and moved that the case be "dismissed for improper prosecutorial conduct." Defense counsel further stated,

> [The State] is upset that [it] cannot get it in, the Extraction Report. So [the State's] doing everything [it] can to push us for a mistrial. It's clear.
>
> And I make, I made a good record on this. It's clear that [the State] is pushing us for a mistrial. Because if [it] gets a mistrial, then [it] can correct whatever improper things that has been done to get that. That's what [the State] wants and [its] going to do everything [it] can for that, Your Honor.

10

Now I want it to be on the record to show that we've objected to that. We've tried to show the Court what [the State is] trying to do. The Court, with respect to the Court's ruling, is allowing [the State] to do that.

But [the State] cannot do this.

The State responded that it did not want a mistrial. Thereafter, the trial court reiterated its previous ruling that A.S. could not

authenticate the technical things that came off of the telephone. If she can remember the things that came from the telephone, she can testify to it. But she's not going to be able to get in is this, whatever this record is that was done by an expert witness. . . . You can ask her what she remembers about [the texts], but you can't lead her with this information.

Defense counsel thanked the court, and A.S.'s testimony continued with her testimony regarding the text messages that she recalled.

Appellant argues that the trial court erred in denying his motion for mistrial. However, after our review of the record, appellant failed to obtain a ruling on his motion for mistrial. It is up to an appellant to obtain a clear ruling on an issue in order to preserve that point for appeal. *Rutledge v. State*, 345 Ark. 243, 45 S.W.3d 825 (2001). Moreover, appellant does not develop his argument as to why he was entitled to a mistrial based on this particular exchange, in which the trial court granted the relief defense counsel requested— the extraction report could not be authenticated by A.S. Our appellate courts have repeatedly held that we will not research or develop arguments for appellants. *See Jester v. State*, 367 Ark. 249, 239 S.W.3d 484 (2006); *Hathcock v. State*, 357 Ark. 563, 182 S.W.3d 152 (2004). Therefore, we must affirm on this particular point.

Lastly, to the extent that appellant argues he was entitled to a mistrial based on the cumulative effect of the State's statements, we hold that his cumulative-error argument is

without merit.  We do not "recognize the cumulative-error doctrine when there is no error to accumulate."  *Green*, 2013 Ark. 497, at 34, 430 S.W.3d at 751 (quoting *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000)).  Thus, we affirm on this point.

## III.  *Closing Argument*

Appellant contends that the State's improper comments made during closing argument were so prejudicial and inflammatory so as to deprive him of his constitutional guarantee of a fair trial.  During closing arguments, the following comments were made by the State:

> I can't thank you enough for your extreme patience throughout this trial.  This has been one of the most difficult trials I've ever been involved with in my twenty-six (26) years as a prosecutor.

> I know it's not easy for you.  I knew it wouldn't be going in.  And I know you take your job very seriously and I can tell that you're obviously paying close attention.  And I appreciate you for that very much.

> As a prosecutor my job is to seek justice.  I represent the State of Arkansas and all the people in the State of Arkansas.  I represent all the people of Phillips County, not just the privileged.

> *And I'll tell you this, I represent* [A.S.].

> *I represent that girl* and I'm here for that girl and for all the girls just like her.

> There's no case more important than when a child is abused.

> What's the defense here?  That there's no DNA in that, in that trailer over a month later?  That his fingerprints aren't even in his own trailer?  Is that really a defense?

> That was a very clean trailer by the time the police got over there with their Search Warrant on July the 21st, 2016.  Very clean, incredible.

> . . . .

12

But *in the end you can make this all right.* You know the truth. And nobody can take away your common sense. Or your right or your duty to speak the truth in this case.

*And to speak the truth for this child by your verdict.* If anything we should protect our children. They are all our children. We can't fail this community to protect any child.

*Is this child somehow worth less than a child in Little Rock?* Is this child somehow worth less than a child in Fayetteville? Is this child worth less than any of those members of the U.S. Gymnastics Team? Is she?

She is not.

. . . .

So, with that being said, let's look at what we got here. We've got [A.S.]'s testimony. And you don't – – her testimony is enough to convict this person, for sure. More than enough.

But she is corroborated by other witnesses. She's corroborated by her parents. She's corroborated by Cliff Sanders. She's, she is corroborated by [M.B.].

*There's no reason to believe that she made this up. What motive? To frame the man that she adored? I don't think so.*

*Tell me why did he pay for her extensions? Her Jordans? Why did he buy her that bikini? You know why. You know why.*

She never changed her story. She told her best friend. She told her parents. She told Francine Hawkins. She told the police.

*She told the workers, the case workers at the CACD, Crimes Against Children Division. She told me. She looked me in the eye and told me what he did.*

*I wouldn't be here if he didn't do it.*

She told you. It's the same every time. And there's a very good reason for that. It's the truth.

(Emphasis added.) Appellant argues that the italicized comments were improper because

they drew the jury's attention to his right not to testify, attempted to shift the burden of

proof, and suggested that the jury should convict him based on the prosecutor's investigation and intuition. That said, as appellant readily admits, he failed to object to these comments at trial. Ordinarily, absent a contemporaneous objection at trial, we will not review alleged errors in the State's closing argument. *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249. However, appellant argues that this court should review this issue on appeal despite his failure to object under the third *Wicks* exception.

The third exception announced in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), is as follows:

> A third exception is a mere possibility, for it has not yet occurred in any case. That relates to the trial court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial. We implied in *Wilson v. State*, 126 Ark. 354, 190 S.W. 441 (1916), that no objection is necessary if the trial court fails to control a prosecutor's closing argument and allows him to go too far: "Appellant cannot predicate error upon the failure of the court to make a ruling that he did not at the time ask the court to make, unless the remarks were so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury not to consider the same. *See Kansas City So. Ry. Co. v. Murphy*, 74 Ark. 256 [85 S.W. 428 (1905)]; *Harding v. State*, 94 Ark. 65 [126 S.W. 90 (1910)]."

*Wicks*, 270 Ark. at 786, 606 S.W.2d at 369–70. Our case law is clear that *Wicks* presents only narrow exceptions that are to be rarely applied. *Chunestudy v. State*, 2012 Ark. 222, 408 S.W.3d 55. Specifically, our supreme court has held that the third exception is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof. *Lard*, *supra*.

Here, even assuming arguendo that the remarks appellant complains of were improper had he objected at trial, the remarks do not rise to the level contemplated in *Wicks*

and *Lard*. Rather, they are closer to the comments made in several other cases in which our supreme court has declined to apply the third *Wicks* exception. *See Chunestudy*, *supra* (refused to apply *Wicks* where the appellant argued that the prosecutor's comments violated his constitutional right to remain silent); *Lard*, *supra* (the prosecutor's comments about sending a message to others who might consider killing a police officer did not rise to the level of falling under the third exception); *Miller v. State*, 2010 Ark. 1, at 37, 362 S.W.3d 246, 286–87 (the prosecutor's comment during closing argument that the "only just verdict is the ultimate penalty and that is the payment of [Miller's] life for the victims" did not "rise to a level that warrant[ed] the trial court to sua sponte declare a mistrial or admonish the jury"); *McKenzie v. State*, 362 Ark. 257, 278, 208 S.W.3d 173, 185 (2005) (refusing to apply the third exception in the case of alleged improper cross-examination and closing argument even though the court "express[ed] serious concern" over the prosecutor's "overly aggressive conduct"); *Buckley v. State*, 349 Ark. 53, 68–69, 76 S.W.3d 825, 834–35 (2002) (*Wicks* was not applicable to the prosecutor's closing comments about evidence that was outside the record and reference to the "golden rule"); *Vaughn v. State*, 338 Ark. 220, 992 S.W.2d 785 (1999) (refusing to apply *Wicks* in the case of alleged improper cross-examination and closing argument comments about the defense attorney's integrity). Thus, we hold that the prosecutor's statements do not rise to the level contemplated under the third W*icks* exception.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Chad M. Green*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.