Ester Lee PARKER *v.* STATE of Arkansas

CR 03-889                                    144 S.W.3d 270

Supreme Court of Arkansas
Opinion delivered January 29, 2004

*Gary W. Potts*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Ester Lee Parker appeals the order of the Desha County Circuit Court convicting him of armed robbery. On appeal, he argues that the trial court erred in (1) denying his motion for a directed verdict; (2) denying his motion for a mistrial; and (3) sentencing him to a term of life imprisonment. Our jurisdiction is pursuant to Ark. Sup. Ct. 1-2(a)(1). We find no error and affirm.

This case stems from an armed robbery of Betty's Grocery on July 30, 2002. According to the record before us, at approximately 4:00 p.m., a car pulled into the parking lot, and the driver exited the vehicle and opened its hood. Shortly thereafter, two men entered the grocery store. The first man entered and headed toward the store's coolers, while the second man entered and quietly closed the door behind him. According to Patsy Lay, an employee, when the second man entered, he had his hand down beside his leg. Lay spoke to both men, but neither responded. When Lay looked back toward the first man, he was walking back toward the second man, who then pointed a shotgun at Lay. Lay identified the first man as Appellant. Joshua Jenkins, who Lay identified as the second man to enter the store, demanded she give them the money out of the cash register. According to Lay, Appellant then took the money from her. Both men exited and got into the car that had pulled into the parking lot. Lay testified that the car was driven by Edward Dunmore and that he was the person who got out of the car and kept looking under its hood.

Tobe Burnett, Chief of Police of Mitchellville, was contacted by the Desha County Sheriff's Office and asked to set up a roadblock following the robbery. Shortly thereafter, a vehicle approached at a high rate of speed and went between Burnett's vehicle and a nearby fire hydrant, hit another car, and landed in a ditch. The three occupants then abandoned the vehicle, first throwing a shotgun into a ditch. Each of the men subsequently fled in a different direction.

Ronnie Mankin, an investigator with the Desha County Sheriff's Office, was notified that there had been a robbery at Betty's Grocery and was given the license number of the vehicle the suspects fled in. Mankin was then informed that the vehicle had been wrecked in nearby Mitchellville, and its three occupants

had fled the scene. While searching that area, Mankin discovered a sawed-off, twenty-gauge shotgun with tape on it. The gun was discovered about sixty to seventy feet from the abandoned vehicle. Police later discovered that the vehicle was registered to Maples Smith Dunmore, mother of Edward Dunmore, who contacted the Desha County Sheriff's Office shortly after the wreck. Police questioned Dunmore, and information that he provided led police to eventually arrest Jenkins and Appellant. Appellant, however, left the area shortly after the robbery and was not arrested until December 2002.

After his arrest, Appellant provided authorities with a statement denying any knowledge that a robbery was going to take place. In that statement, Appellant stated that on the day of the robbery, he was at his sister's house with Jenkins, when Dunmore drove by. Appellant asked Dunmore to give him and Jenkins a ride so he could locate some people in a car that he had had problems with earlier in the day. According to Appellant, the three men began riding around and drinking and ended up at Betty's Grocery. Appellant stated that he went into the store to get some more liquor when Jenkins suddenly came in and pulled a shotgun on the store's employee and told her to give him the money. Appellant stated that the employee then gave him the money, and he and Jenkins left the store. After leaving the car in Mitchellville, Appellant said all three men simply went their separate ways and that he never received any of the money from the robbery.

Initially, authorities charged Appellant, Dunmore, and Jenkins each with one count of aggravated robbery, a Class Y felony, and one count of theft of property, a Class C felony. Prior to Appellant's trial, however, Dunmore pled no contest to a charge of hindering apprehension and was sentenced to ten years' probation. In exchange for his plea, Dunmore agreed to testify truthfully against Appellant and Jenkins.

Appellant was tried by a jury on April 14, 2003. At the conclusion of all the evidence, the jury returned a verdict of guilty on both charges. Prior to the sentencing phase of the trial, the State introduced a certified copy of a judgment and commitment order reflecting that Appellant had pled guilty on January 20, 1993, to two counts of aggravated robbery, one committed on August 14, 1992, and the second committed on August 15, 1992. The State then argued that under Ark. Code. Ann. § 5-4-501(d) (Supp. 2003), the Arkansas Habitual Offender's Statute, a person previ-

ously convicted of two or more violent felonies as enumerated in the statute, must be sentenced to life in prison upon his conviction for a third violent felony. Appellant argued that at the time he pled guilty to the two prior counts of aggravated robbery, the three-strikes law was not yet in effect and, thus, was being applied retroactively. The trial court disagreed and sentenced Appellant to life in prison on the aggravated robbery conviction and twelve months' imprisonment on the misdemeanor theft charge, to run concurrently with the life sentence. From that order, comes the instant appeal.

## I. Sufficiency of the Evidence

Appellant's first argument on appeal is that the trial court erred in failing to grant his motion for a directed verdict raised at the conclusion of the State's case and renewed at the close of all the evidence. In his motion, Appellant argued that there was not substantial evidence to prove that he had knowledge that Jenkins was armed and intended to commit aggravated robbery. We disagree.

The standard of review in cases challenging the sufficiency of the evidence is well established. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Reed v. State,* 353 Ark. 22, 109 S.W.3d 665 (2003); *Fairchild v. State,* 349 Ark. 147, 76 S.W.3d 884 (2002). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State,* 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Haynes v. State,* 346 Ark. 388, 58 S.W.3d 336 (2001).

In the present case, we have the testimony of Dunmore directly linking Appellant to the aggravated robbery. Dunmore testified that on July 30, 2002, he was driving his mother's car when on the way to his girlfriend's house, he saw Appellant and Jenkins, who flagged him down. They asked Dunmore to give them a ride to a nearby apartment complex. Once there, Appellant got out of the vehicle and went into one of the apartments, while Jenkins remained in the car with Dunmore. Dunmore stated that

during the drive to the apartment, he noticed that Jenkins had a sawed-off shotgun in his pants. When Appellant returned to the car, Dunmore asked him and Jenkins where they wanted to go because he needed to return the car to his mother. Jenkins responded that they needed some money, and Appellant stated, "Yeah, we need to do this." According to Dunmore, Appellant and Jenkins threatened him and told him to drive to Betty's Grocery. When they got to the store, Appellant told Dunmore to pop the hood of the car and act like he was messing with something under the hood. Appellant and Jenkins then went in to rob the store. After exiting the store, Dunmore noticed that Appellant was carrying the cash and that Jenkins had the shotgun in his hands. When they got back in the car, both Appellant and Jenkins told Dunmore to hurry and leave. After wrecking his car and fleeing, Dunmore got a ride to his cousin's house in Dumas. He then contacted his parents, who in turn, contacted authorities.

The jury was instructed that Dunmore by his own statements was an accomplice to the armed robbery; thus, his testimony standing alone is insufficient to convict Appellant. Pursuant to Ark. Code Ann. § 16-89-111 (Supp. 2003), corroborative evidence must tend to connect the defendant with the commission of the crime. Corroboration is not sufficient, if it merely shows that the crime was committed and the circumstances of that crime. *Andrews v. State*, 344 Ark. 606, 42 S.W.3d 484 (2001). This court has held that the "corroboration must be sufficient standing alone to establish the commission of the offense and to connect the defendant with it." *Johnson v. State*, 303 Ark. 12, 17, 792 S.W.2d 863, 865 (1990); *see also David v. State*, 295 Ark.. 131, 140, 748 S.W.2d 117, 122 (1988). The corroborative evidence must be substantial evidence, which is stronger evidence than that which merely raises a suspicion of guilt. *Henderson v. State*, 279 Ark. 435, 652 S.W.2d 16 (1983). Circumstantial evidence qualifies as corroborating evidence but it, too, must be substantial. See *David*, 295 Ark. 131, 748 S.W.2d 117. However, corroboration need not be so substantial in and of itself to sustain a conviction. See *Rhodes v. State*, 280 Ark. 156, 655 S.W.2d 421 (1983). Thus, this court must determine if there is substantial corroborating evidence supporting Appellant's conviction. We conclude there is.

In addition to Dunmore's testimony, there was ample testimony placing Appellant at the scene of the crime. Patsy Lay admitted that Appellant was not armed, nor did he ever say anything while in the store. She did testify, however, that once Jenkins entered the store, Appellant made his way back toward him. Moreover, after Jenkins demanded the money, it was Appellant who actually took it from Lay's hands. Betty Hill, owner of the store, also testified that when she came out of the restroom, there were two men standing in front of the cash register. She recognized both Appellant and Jenkins from her time as a substitute teacher.

In *Andrews*, 344 Ark. 606, 613-14, 42 S.W.3d 484, 489, this court stated:

> The presence of an accused in the proximity of a crime, opportunity, and association with a person involved in a crime in a manner suggestive of joint participation, are relevant factors in determining the connection of an accomplice with the crime. *Ashley v. State*, 22 Ark. App. 73, 732 S.W.2d 872 (1987). When two or more persons assist each other in the commission of a crime, each is an accomplice and criminally liable, ultimately, for his own conduct, but he cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole. *Phillips v. State*, 17 Ark. App. 86, 703 S.W.2d 471 (1986).

Thus, just because Appellant was not armed with a weapon nor ever demanded any money does not negate his role in the armed robbery. He entered the store immediately before Jenkins, went and stood next to Jenkins while he pointed the gun at Lay and demanded the cash. Appellant then took the money from Lay and fled the store with Jenkins, getting into Dunmore's car.

In addition, Officer Barnett testified that he saw Appellant in the vehicle that was linked to the robbery. He attempted to pursue the occupants of the car, but they escaped on foot after wrecking the vehicle. It is well settled that flight following the commission of an offense is a factor that may be considered with other evidence in determining probable guilt and may be considered as corroboration of evidence tending to establish guilt. *Chapman v. State*, 343 Ark. 643, 38 S.W.3d 305 (2001), *cert. denied*, 540 U.S. 930, 124 S.Ct. 344 (2003).

It is true that Appellant took the stand in his own defense and claimed that he had no knowledge that Jenkins was going to commit a robbery. According to Appellant, it was Jenkins that told Lay to give the money to Appellant. This contention, however, is in direct conflict with Lay's testimony that Appellant grabbed the money out of her hand. Moreover, Appellant's only explanation that he did not know that Jenkins was armed with a sawed-off shotgun was that Jenkins had it hidden under baggy clothes. Appellant's explanation as to why he left the store with Jenkins and got back in Dunmore's car was that he was scared, but Appellant never testified that Jenkins threatened him. This court has stated that a defendant's improbable explanation of suspicious circumstances may be admissible as proof of guilt. *Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003). Thus, Appellant's improbable explanations of the events surrounding the robbery constitute further circumstantial evidence supporting his conviction.

In sum, there was substantial evidence corroborating Dunmore's testimony regarding Appellant's role in the armed robbery. Considering this evidence in a light most favorable to the State, this court cannot say that the trial court erred in refusing to grant Appellant's motion for a directed verdict.

## II. Mistrial

For his next point on appeal, Appellant argues that the trial court erred in refusing to grant his motion for mistrial. During the testimony of Officer Barnett, when asked if he recognized any of the men in the vehicle, he answered that he knew who Appellant was because "he's been, you know, in and out of the Dumas jail." Appellant's attorney promptly moved for a mistrial, arguing that Barnett's statement showed that his client was a criminal and that he could no longer get a fair trial. He further argued that Appellant would be forced to give up his right to not testify at trial in order to explain why he had been in and out of jail. The State argued that an admonition could cure any harm that might have been caused by Barnett's statement. The trial court refused to grant a mistrial but offered to admonish the jury. Thereafter, the trial court instructed the jury as follows: "You are to disregard the basis of this witness' identification of the accused in this case." We cannot say

that the trial court abused its discretion in refusing to grant a mistrial in this case.

We have said that a mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected. *Elser v. State*, 353 Ark. 143, 114 S.W.3d 168 (2003); *Jenkins v. State*, 348 Ark. 686, 75 S.W.3d 180 (2002). The circuit court has wide discretion in granting or denying a motion for mistrial, and, absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. *Id.* This court stated in *Boyd v. State*, 318 Ark. 799, 804, 889 S.W.2d 20, 22 (1994), that "[t]he bottom line on mistrials is that the incident must be so prejudicial that the trial cannot, in fairness, continue." Generally, an admonition to the jury cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998), *cert. denied*, 526 U.S. 1073 (1999).

In the present case, Appellant argues that he was fundamentally prejudiced by Barnett's statements because he was then required to take the stand and testify that he had simply been in and out of jail because of traffic tickets. According to Appellant, this deprived him of his Fifth Amendment right not to testify.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" Likewise, article 2, section 8, of the Arkansas Constitution provides that a criminal defendant shall not be compelled to testify against himself or herself. In the present case, however, we cannot say that Appellant was compelled to testify because of Barnett's statements and the trial court's subsequent refusal to declare a mistrial.

The record reflects that during opening statements, counsel for Appellant stated to the jury that Appellant was going to testify about the facts surrounding the robbery. Indeed, Appellant did take the stand, and the crux of his testimony was an explanation of the events leading up to the robbery and his assertion that he had no knowledge that Jenkins was going to rob the store. It was not until redirect examination that he even explained that he had been in and out of the Dumas jail as a result of incurring traffic tickets.

Thus, it appears that Appellant intended to take the stand prior to any prejudicial statement about his criminal background.

In addition, this court will take into consideration whether the prosecutor deliberately induced a prejudicial response. *See, e.g., Strawhacker v. State,* 304 Ark. 726, 804 S.W.2d 720 (1991). In *Strawhacker,* we noted that the prosecutor had not deliberately induced a prejudicial response regarding the appellant's prior conviction. That case was distinguished from *Maxwell v. State,* 279 Ark. 423, 652 S.W.2d 31 (1983), where this court determined that a prosecutor's specific and deliberate reference to a prior conviction during his cross-examination could not be "made harmless by anything less than a reprimand in the presence of the jury or by the granting of a mistrial." *Id.* at 425, 652 S.W.2d at 33. This case is more analogous to the situation in *Strawhacker,* 304 Ark. 726, 804 S.W.2d 720, as the prosecutor simply asked Officer Barnett if he recognized the passenger in the front seat of Dunmore's car. The prosecutor in no way attempted to induce mention of Appellant's prior convictions.

In sum, we cannot say that Barnett's statement was so patently prejudicial that it precluded Appellant from obtaining a fair trial. Nor, can we say that any prejudice that may have resulted from the statement was not cured by the trial court's admonition to the jury.

### III. Sentence Enhancement

For his final point on appeal, Appellant argues that it was error for the trial court to sentence him to a term of life imprisonment under the Arkansas Habitual Offender's Statute, codified at section 5-4-501(d). According to Appellant, his prior convictions occurred prior to the enactment of the "three strikes" enhancement provision and, thus, should not have been used to enhance his penalty in this case. The State counters that the conviction dates are irrelevant to the application of the three-strikes law and, thus, Appellant's argument is without merit. The State is correct.

The State sought to sentence Appellant to an extended term of imprisonment pursuant to section 5-4-501(d). That section provides that a defendant who is convicted of a felony involving violence, as set out in subsection (d)(2), and who has previously been convicted of two or more felonies involving violence, shall

be sentenced to an extended term of imprisonment. It provides further that where, as in Appellant's case, the defendant is convicted of a Class Y felony, and there are two prior convictions for felonies involving violence, the mandatory sentence is life imprisonment.

■ ■ This court has held that the date of the commission of an offense being used to enhance a sentence under section 5-4-501 is not relevant. *Jones v. State*, 347 Ark. 455, 65 S.W.3d 402, *cert. denied*, 536 U.S. 909 (2002); *Beavers v. State*, 345 Ark. 291, 46 S.W.3d 532 (2001). In *Beavers*, this court pointed out that provisions of the habitual offender statute are not deterrent in nature, but rather are punitive, so that a prior conviction regardless of the date of the crime may be used to increase punishment. Moreover, the habitual offender statute does not create a distinct additional offense, but rather it provides a guide for the court or jury in fixing final punishment on the charged offense. *Jones*, 347 Ark. 455, 65 S.W.3d 402; *see also Finch v. State*, 262 Ark. 313, 556 S.W.2d 434 (1977).

We are unpersuaded by Appellant's argument that this case is controlled by the decisions in *Neely v. State*, 317 Ark. 312, 877 S.W.2d 589 (1994), or *State v. Dennis*, 318 Ark. 80, 883 S.W.2d 811 (1994). At issue in *Neely* was whether an appellant was entitled to the benefit of an act that lowered the minimum sentences for habitual offenders. The appellant argued she was entitled to be sentenced under the new lower sentences provided by Act 550 of 1993, because the act became effective after she committed the crime, but before she was sentenced for it. This court rejected her argument, stating that the legislature intended Act 550 to apply to acts committed after its effective date.

■ Likewise, in *Dennis*, 318 Ark. 80, 883 S.W.2d 811, this court reversed an order of the trial court sentencing a defendant to a lesser sentence under the revised provision of section 5-4-501, because that revised provision was not in effect at the time the defendant committed the crime. Thus, the rulings in *Neely* or *Dennis* are not instructive on Appellant's claim.

■ Here, the three-strikes law was in effect at the time Appellant committed the aggravated robbery of Betty's Grocery. His life sentence was in accordance with that provision. The date of his prior convictions is of no consequence; thus, the trial court did not err in sentencing him to life in prison.

*IV. 4-3(h) Review*

In addition to the issues briefed by counsel, we have further reviewed the transcript of the record in this case for adverse rulings, pursuant to Ark. Sup. Ct. R. 4-3(h) and Ark. Code Ann. § 16-91-113(a) (1987), and no such reversible errors were found.

Affirmed.