Charles Harvest DAVIS  *v.*
STATE of Arkansas

CR 04-596

207 S.W.3d 474

Supreme Court of Arkansas
Opinion delivered April 21, 2005

*Gina H. Reynolds*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Charles Harvest Davis appeals the order of the Pulaski County Circuit Court convicting him of the offense of sexual assault in the second degree and sentencing him to a term of twenty years' imprisonment. On appeal, he argues that the trial court erred in: (1) denying his motion for a directed verdict; (2) admitting hearsay evidence as an excited utterance; and (3) admitting evidence under Ark. R. Evid.

404(b). This case was certified to us from the Arkansas Court of Appeals as involving an issue of first impression and an issue needing consistent development of the law; hence, our jurisdiction is pursuant to Ark. R. Sup. Ct. 1-2(b)(1) and (b)(5). We affirm.

The record reveals that on October 27, 2002, S.P.B., the victim in this case, was practicing with the other members of her church's praise dance team. While they were practicing, she noticed Appellant watching them. Then as the group was leaving the church, Appellant tried to get one of the members to return to the sanctuary to turn the lights off. After telling Appellant to turn the lights off himself, the group left. S.P.B. then got into her car and started traveling down Geyer Springs Road toward Lancaster Road when she noticed a silver car speeding up behind her. According to S.P.B., she stopped at a yellow light and the silver car almost rear-ended her. She then noticed Appellant was driving the silver car and that he was motioning her to pull her vehicle over. S.P.B. turned into the parking lot of an abandoned school, and Appellant asked her to return to the church with him because he had forgotten something. S.P.B. agreed and followed Appellant back to the church.

Once at the church, the two parked in a rear parking lot and rode an elevator to an upstairs conference room. According to S.P.B, once they entered the conference room, Appellant shut the door, turned off the light, pushed her against a wall, and started trying to kiss her. She asked him what he was doing, and he told her that he knew she had been looking at him the same way he looked at her. S.P.B. asked Appellant to turn on the light, but he grabbed her again and shoved her against a table, but she pushed him off of her. She again asked him to turn on the light, and Appellant started apologizing to S.P.B. S.P.B. told Appellant that nothing was going to happen between them, and she reminded him that she was on the praise dance team with his wife. At that point, Appellant told S.P.B. that his wife knew about the attraction and wanted to have a threesome with S.P.B. He again tried to grab S.P.B., touching her buttocks and her breast during the struggle. S.P.B. told Appellant that he had three minutes to open the door. Before he finally opened the door, Appellant grabbed S.P.B.'s arm and asked if he could suck on her breast. She then heard him unzip his pants, and he then asked if he could masturbate in front of her. He also asked her to engage in oral sex. She refused and told him that she wanted out of the conference room.

Appellant finally opened the door, and he and S.P.B. rode the elevator back down to the first floor of the church. S.P.B. stated that she did not show any emotion at the time because she knew she was in the church with him by herself and was afraid that he might attack her again. She simply walked out of the church and got into her car. Once Appellant left, S.P.B. called a friend, Jackie Seals, and told her what happened. Shortly thereafter, S.P.B. met the rest of her praise dance team at Faith Temple where they were scheduled to perform. S.P.B. explained what happened with Appellant, and the team members decided to meet with the church's pastor after the performance. The next morning, the church pastor contacted Appellant and told him that he would no longer be the church's youth minister.

The next day, S.P.B. went to the police and reported what had occurred in the conference room. On February 19, 2003, Appellant was charged by felony information with one count of criminal attempt to commit rape. He was also charged as a habitual offender. Appellant was tried before a jury in Pulaski County Circuit Court on November 20-21, 2003. He was convicted of the lesser-included offense of sexual assault in the second degree. Appellant was sentenced, as a habitual offender, to a term of twenty years' imprisonment. This appeal followed.

## I. Sufficiency of the Evidence

For his first point on appeal, Appellant argues that the trial court erred in denying his motion for a directed verdict because there was insufficient evidence to support his conviction on the charge of sexual assault in the second degree because the State failed to prove the element of forcible compulsion. The State counters that Appellant failed to preserve this issue for our review. Alternatively, the State argues that there was substantial evidence supporting Appellant's conviction.

Before turning to the merits of this point, this court must first determine whether the issue is preserved for appellate review. The State argues that Appellant failed to preserve his argument regarding the sufficiency of the evidence because he did not specifically move for a directed verdict on the lesser-included offense of second-degree sexual assault. In support of its argument the State relies on this court's decision in *Grillot v. State*, 353 Ark. 294, 304-05, 107 S.W.3d 136, 142 (2003). In that case, this court stated:

This court has held that, in order to preserve challenges to the sufficiency of the evidence supporting convictions for lesser-included offenses, defendants must address the lesser-included offenses either by name or by apprising the trial court of the elements of the lesser-included offenses questioned by their motions for directed verdict. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001) (concluding that challenge to the sufficiency of the evidence to support a first-degree murder conviction was procedurally barred when the defendant was charged with capital murder and failed to move specifically for directed verdict on the lesser-included offense of first-degree murder); *see also Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001).

This court went on to conclude in *Grillot* that the appellant had failed to preserve his argument regarding the sufficiency of the evidence supporting his first-degree-murder conviction because at trial he only challenged the evidence supporting the greater offense of capital murder.

Here, however, *Grillot* is not applicable, because Appellant was charged with criminal attempt to commit rape by forcible compulsion. He was convicted of sexual assault in the second degree, which is prohibited under Ark. Code Ann. § 5-14-125 (Supp. 2001). That section provides that a person commits the offense of sexual assault in the second degree by engaging in sexual contact with another person by forcible compulsion. At the conclusion of the State's case in chief, Appellant moved for a directed verdict arguing:

> [T]he State has failed to make a prima facie case that Charles Harvest Davis is guilty of criminal attempt to commit rape, that he made a substantial step in the commission of the offense of rape, forcible compulsion, the sexual activity.

This motion was renewed at the close of all the evidence when Appellant again argued that the State failed to make a prima facie case of attempted rape by forcible compulsion. Then, when the trial court instructed the jury on criminal attempt to commit rape and the lesser-included offense of sexual assault in the second degree, the court gave one instruction that stated:

> To sustain this charge, the State must prove the following things beyond a reasonable doubt:

First: That Charles H. Davis engaged in sexual contact with the sex organs of S.P.B.;

And second: That Charles H. Davis did so by forcible compulsion.

Thus, when Appellant challenged the State's case by arguing that it had failed to prove forcible compulsion, this was sufficient to preserve a challenge to the sufficiency of the evidence on the lesser-included offense of sexual assault in the second degree. As this court recognized in *Grillot*, it is not necessary to specifically state the lesser-included offense by name, as long as the elements of that lesser-included offense are addressed in the directed-verdict motion. In this case, that element was forcible compulsion, and it was addressed in Appellant's directed-verdict motion.

Having determined that Appellant preserved this issue for our review, we now turn to the merits of Appellant's argument that there was insufficient evidence supporting his conviction. Appellant argues that the State failed to prove the element of forcible compulsion. Specifically, he argues that S.P.B.'s testimony that she did not consent to his advances was clearly unbelievable and should therefore be disregarded by this court. We disagree.

The standard of review in cases challenging the sufficiency of the evidence is well established. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Parker v. State*, 355 Ark. 639, 144 S.W.3d 270 (2004); *Reed v. State*, 353 Ark. 22, 109 S.W.3d 665 (2003). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Parker*, 355 Ark. 639, 144 S.W.3d 270.

Section 5-14-125(a)(1) provides that a person commits sexual assault in the second degree by engaging in sexual contact with another person by forcible compulsion. Forcible compulsion is defined in Ark. Code Ann. § 5-14-101(2) (Supp. 2003) as "physical force or a threat, express or implied, of death or physical

injury to or kidnapping of any person." Section 5-14-101(9) defines "sexual contact" as "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female."

In the instant case, S.P.B. testified that Appellant followed her from the church, convinced her to pull her car over, and ultimately, follow him back to the church. Once at the church, Appellant shoved S.P.B. against a wall and tried to kiss her. S.P.B. demanded that Appellant open the door but he grabbed her again, pushing her against a table. She again told him to get off of her and to open the door. Appellant then grabbed S.P.B. a third time, touching her buttocks and breast. He also unzipped his pants and made a lewd request to masturbate in front of her and to engage in oral sex. Finally, when S.P.B. refused, Appellant let her go and opened the door to the conference room, allowing her to leave. S.P.B.'s testimony clearly established the element of forcible compulsion used by Appellant. This court has recognized that it is well-established law that the uncorroborated testimony of a rape victim is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *Benson v. State*, 357 Ark. 43, 160 S.W.3d 341 (2004); *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002); *Williams v. State*, 331 Ark. 263, 962 S.W.2d 329 (1998). Moreover, inconsistencies in the testimony of a rape victim are matters of credibility for the jury to resolve. *Id*. Thus, Appellant's argument that this court should disregard the testimony of S.P.B. as improbable is without merit.

Moreover, there was evidence introduced to support S.P.B.'s testimony about what occurred between her and Appellant. Tonya Cosey testified that she was present during the praise dance team's practice on October 27, 2002, and noticed Appellant watching S.P.B. Cosey also testified that she was going to S.P.B.'s home with her after the practice and was in her car in front of S.P.B. on 65th Street when she noticed a silver car almost rear-end S.P.B. Shortly thereafter, Cosey received a call from S.P.B., telling her that she was turning around to return to the church with Appellant, who had forgotten something. Cosey went on to S.P.B.'s house. A short time later, when S.P.B. arrived at her house, she was very upset, nervous, and hysterical, according to Cosey. S.P.B. then told Cosey that Appellant had basically tried to rape her.

Jacqueline Seals, another member of the praise dance team, testified that approximately thirty minutes after she left the church, she received a call from S.P.B., who was upset and crying.[1] S.P.B. told Seals that Appellant had thrown her against a door and tried to kiss her and wanted to masturbate in front of her. She also told Seals that Appellant told her that his wife wanted to engage in a threesome with her. According to Seals, when she saw Appellant a short time later, she was still upset. Later, during a meeting at the church, Seals heard Appellant call S.P.B. In sum, the testimony of Cosey and Seals corroborates S.P.B.'s version of events and demonstrates that her testimony was not highly improbable, as Appellant suggests.

## II. Excited Utterance

Next, Appellant contends that it was error for the trial court to admit the testimony of Jacqueline Seals about a phone call she received from S.P.B. because the testimony was hearsay, and did not fall within the excited-utterance exception to the hearsay rule. The State argues that the trial court did not abuse its discretion in admitting the evidence.

Arkansas Rule of Evidence 803(2) provides in relevant part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> . . . .

> (2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

In analyzing Rule 803(2), this court has recognized that there are several factors to consider when determining if a statement falls under this exception: the lapse of time, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002); *Moore v. State*, 317 Ark. 630, 882 S.W.2d 667 (1994) (adopting these factors

---

[1] In our review of the sufficiency of the evidence, we consider all evidence even inadmissible evidence in the light most favorable to the State. *See Hampton v. State*, 357 Ark. 473, 183 S.W.3d 148 (2004).

from the Eighth Circuit's decision in *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980)). For the exception to apply, there must be an event which excites the declarant. *Flores*, 348 Ark. 28, 69 S.W.3d 864. In addition, "[i]n order to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." *Peterson v. State*, 349 Ark. 195, 199, 76 S.W.3d 845, 847 (2002) (quoting *Fudge v. State*, 341 Ark. 759, 769, 20 S.W.3d 315, 320, *cert. denied*, 531 U.S. 1020 (2000) (quoting *Iron Shell*, 633 F.2d at 85-86)). The statements must be uttered during the period of excitement and must express the declarant's reaction to the event. *Moore*, 317 Ark. 630, 882 S.W.2d 667. It is for the trial court to determine whether the statement was made under the stress of excitement. *Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994).

In this case, the testimony challenged by Appellant is as follows:

> She told me that she had left and that Harvest had followed her and told her to come back to the church because he had some papers to give her. And she followed him into his office and, once they got in, he shut the door and he threw her up against the door and kissed her. And then he threw her on the desk, and she had to kick him. And he told her she made him so hot that he wanted to masturbate in front of her and pulled his penis out. And she said she was going to tell his wife, and he said she already knew and they both found S.P.B. attractive and they wanted to have a threesome with her.

> . . . .

> . . . And that there was a window there and that he wanted to perform oral sex with her right there in front of the window.

According to Seals, she received the call from S.P.B. approximately thirty minutes after Seals left the church. Seals also stated that S.P.B. was upset and crying during the conversation.

Prior to trial, Appellant filed a motion *in limine* seeking to exclude Seals's testimony as hearsay. The State argued that it was an excited utterance and, thus, admissible under Rule 803(2). Appellant argued that it was not an excited utterance because the time frame between the events at the church and S.P.B.'s phone

call to Seals could not be established. Appellant continues to argue that there was no definitive time frame established, and because the time element is a critical factor in the excited-utterance analysis, it was error for the trial court to admit Seals's testimony. Thus, the only factor Appellant is challenging on appeal is the lapse of time.

As we previously stated, for a statement to fall within the excited-utterance exception, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003); *Flores*, 348 Ark. 28, 69 S.W.3d 864. In the same vein, however, this court has recognized that the lapse of time between the startling event and the out-of-court statement, although relevant, is not dispositive of the application of the excited utterance exception to the hearsay rule. *Peterson*, 349 Ark. 195, 76 S.W.3d 845; *Killcrease v. State*, 310 Ark. 392, 836 S.W.2d 380 (1992). In *Peterson*, 349 Ark. 195, 76 S.W.3d 845, we further explained that the general rule is that an utterance following an exciting event must be made soon enough thereafter that it can reasonably be considered a product of the stress of the excitement rather than of intervening reflection or deliberation. However, we have noted that the trend is toward expansion of the time interval after an exciting event. *Id.*

Here, Seals testified that she had been in the church earlier that morning, practicing with the other members of the praise dance team. According to Seals, the members all left at about the same time. Seals further stated that approximately thirty minutes after she left the church, she received the call from S.P.B. Moreover, Seals testified that S.P.B. was upset and crying during the phone conversation. In sum, this was ample evidence to satisfy the time-frame element of the excited-utterance exception. Accordingly, we cannot say that the trial court abused its discretion in admitting Seals's testimony.

### III. Rule 404(b)

As his final point on appeal, Appellant argues that it was error for the trial court to allow the testimony of Corla Ridout regarding an incident where Appellant made unwanted advances toward her. According to Appellant, this evidence was not permissible under Rule 404(b) because it did not have any independent relevance and was admitted only to demonstrate Appellant's

bad character and propensity to make advances toward women. The State counters that this evidence was properly admitted under Rule 404(b) because it was independently relevant in proving that Appellant sexually assaulted S.P.B. Alternatively, the State argues that even if the evidence was improperly admitted, Appellant cannot show that he was prejudiced because there was overwhelming evidence of his guilt. We agree that the trial court did not err in admitting Ridout's testimony.

Rule 404(b) of the Arkansas Rules of Evidence provides:

> *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In analyzing the admission of evidence under Rule 404(b), this court has stated that such evidence is not admissible simply to show a prior bad act. *Pickens v. State*, 347 Ark. 904, 69 S.W.3d 10 (2002); *Haire v. State*, 340 Ark. 11, 8 S.W.3d 468 (2000). To be admissible, the evidence must be independently relevant, which means it must have a tendency to make the existence of a fact of consequence to the determination of the case more or less probable. *Pickens*, 347 Ark. 904, 69 S.W.3d 10; *Bragg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997) (citing *Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994)). *See also* Ark. R. Evid. 401. This court has held that evidence is indisputably relevant if it proves a material point and is not introduced solely to prove that the defendant is a bad person. *Burmingham v. State*, 342 Ark. 95, 27 S.W.3d 351 (2000). It is well settled that the admission or rejection of evidence is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Hathcock v. State*, 357 Ark. 563, 182 S.W.3d 152 (2004).

Here, the evidence admitted under Rule 404(b) was testimony from Corla Ridout regarding an event that transpired between herself and Appellant. She testified as follows:

> We were leaving church and he, he followed me. I could see him in the back. We would always go the same way until we get to the light. And he lives closer to Central, and I live closer to [the] west side of town, which is by Rodney Parham area. And so I usually go the back way because it's easier to get there. Going down John Barrow is just easier. It's quicker.

And he had called me on my cell phone and said, Do you have a minute to talk to me? And I said, What is it about? You know, I was needing to get somewhere. And he said, I just need to talk to you for a minute. And I thought it was something serious, and I didn't mind, you know, doing that. So I stopped. I stopped over — we stopped in the Harvest Foods parking area. He got out. I got out. And I said, What's the problem? You know, what do you want to talk about? And he was like — you know, he just started going over some things that he wanted to talk about with Marty. And I said, Those are things you need to talk about with Marty.

Appellant continued to insist that he needed to talk to Ridout and asked her to get into his car. She complied, and the pair continued talking. Then, Appellant turned his car on and began to drive toward the Boyle Park area, eventually stopping in a park-like area. He continued to talk about his wife, but changed the subject, telling Ridout about how he remembered her from high school, but she denied remembering him from that time. According to Ridout, Appellant became upset that she did not remember him or that she was supposed to have kissed him in high school.

Ridout then testified that:

I was supposed to have kissed him, and he was supposed to be my first.

. . . .

I'm sitting there, going, okay, this is not the way I thought it was going to go, and I asked him to take me back to my car.

... He was ignoring me. And I asked, Okay I think we need to stop right here. So he decides that — he just reached in front of me as if, you know, he was going to touch, touch, you know, graze by me to see if, you know, I was going to respond. I'm sure that's probably what it was, but that's speculation on my part. But, still, he reached his arm right past me, right across here, right across my frame.

. . . .

I reached back. I was getting ready to defend myself right there because I was like, okay, that was a little much. I didn't expect for him to do anything like that. I just wanted him to take me back to

my car. That's all I asked him to do because I knew I was about to get violent in the car because I felt unsafe at that point.

Thus, according to the State, this testimony from Ridout that Appellant made an unwanted advance toward her was independently relevant to show that he sexually assaulted S.P.B. The State argues that the two situations were similar and contradicted Appellant's claim that his interaction with S.P.B. was consensual.

It is true that *modus operandi* evidence is admissible in rape cases to prove, a common plan. *Burmingham*, 342 Ark. 95, 27 S.W.3d 351. Similarly, evidence of other crimes or bad acts are admissible to show intent. *See Pickens*, 347 Ark. 904, 69 S.W.3d 10. However, this court has recognized that to be probative under Ark. R. Evid. 403, the prior act must be similar to the crime charged. *See Morgan v. State*, 359 Ark. 168, 195 S.W.3d 889 (2004); *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995). This court further elaborated in *Sasser*, explaining:

> The degree of similarity between the circumstances of prior crimes and the present crime required for admission of evidence under Rule 404(b) is a determination that affords considerable leeway to the trial judge, and may vary with the purpose for which the evidence is admitted. *See* 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 112, n. 4 and accompanying text (2d ed. 1994) ("To be probative, prior criminal acts must require an intent similar to that required by the charged crime, although it is usually said that the prior crime need not closely resemble the charged crime."); 1 John W. Strong, *McCormick on Evidence* § 190, n. 31 and accompanying text (4th ed. 1992) ("The similarities between the act charged and the extrinsic acts [admitted to show the act charged was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge] need not be as extensive and striking as is required . . . [to show *modus operandi*]").

*Id.* at 447, 902 S.W.2d at 778-79.

Here, the incident between Appellant and Ridout bore enough similarities to the incident for which Appellant stood trial that we cannot say that the trial court abused its discretion in admitting the evidence pursuant to Rule 404(b). In both instances, Appellant followed these women from the church and convinced them to pull their vehicles over. Once he convinced the women to pull over, he then persuaded them to go to a more isolated area with him. Then, once Appellant was alone with the women, he

would make suggestive comments to them and unwanted sexual advances toward them. In sum, the evidence that Appellant had made such unwanted advances toward Ridout was independently relevant to rebut Appellant's claim that his encounter with S.P.B. was consensual. Accordingly, this evidence was properly admitted at trial pursuant to Rule 404(b).

Affirmed.

HANNAH, C.J., dissents.

JIM HANNAH, Chief Justice, dissenting. I must respectfully dissent. The State argues on appeal that the incident with Corla Ridout was "similar" to S.P.B.'s description of Davis's assault on her. The State further argues that Davis's "similar" conduct with Ridout was "independently relevant to establish that Davis sexually assaulted" S.P.B. The State therefore argues that proof of Davis's criminal disposition to engage in this form of conduct against Ridout is proof that he later assaulted S.P.B. in the same way. We recently stated that "[t]he general rule is that evidence of other crimes by the accused, not charged in the indictment or information and not a part of the same transaction, is not admissible at the trial of the accused." *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333, 342 (2004). Unfortunately, although we still state this rule occasionally, we have not actually followed the rule in years. Over the last few years, we have dutifully recited the language from Ark. R. Evid. 404(b) that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity therewith," then noted that such evidence is, however, admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We then approve admission of the evidence without any real analysis.

It is obvious that the State offered the evidence to prove Davis's character, that he is a sexual predator who preys on women. This conclusion is most obvious because the similarity that the State relies upon is Davis's criminal disposition to assault women in a specific way. However, whether Davis had a plan or method was not at issue or even relevant where the crime charged, as well as the crime of which Davis was convicted, required an act by forcible compulsion. The jury could either believe S.P.B.'s testimony or not believe it. If the testimony was believed, motive was not open to doubt. If the jury had believed Davis, then all that happened was consensual. Clearly the jury believed S.P.B. The

jury concluded that Davis assaulted S.P.B. There is no connection between the incident with Ridout and the assault on S.P.B. Rape is not a continuing offense; it is a separate crime for each occurrence. *Smith v. State*, 354 Ark. 226, 118 S.W. 3d 542 (2003); *Rains v. State*, 329 Ark. 607, 953 S.W.2d 48 (1997); *Tarry v. State*, 289 Ark. 193, 710 S.W. 2d 202 (1986). Other incidents that are totally unrelated to the charge in question are "clearly inadmissible." *Rowdean v. State*, 280 Ark. 146, 655 S.W. 2d 413 (1983). The evidence of the incident with Ridout was offered to show that Davis was a bad man who acted in conformity with his character when he attacked S.P.B.

The prohibition of the use of evidence of prior wrongs and crimes to show the criminal disposition of the defendant is said to have been assumed and maintained by the English courts "ever since the common law itself has been in existence." *People v. Shea*, 147 N. Y. 78, 99, 41 N.E. 505 (1895). I believe that some of the confusion is a consequence of its ancient origin in the common law, making it arguably an odd appendage rather than an integral part of modern codes of evidence. One might forcefully argue that the rule is to some extent redundant of current concepts of relevance and exclusion based on the balance between prejudicial harm and probative value.

However, the rule rises above codes of evidence, and along with other fundamental principles that also have their origins in ancient common law, remains important in safeguarding rights held fundamental in Anglo-American law since its beginnings. In *Alford v. State*, 223 Ark. 330, 266 S.W. 2d 804 (1954), we stated that the rule is so familiar in English and American courts that its acceptance need not be discussed at length. In *Alford,* we set out the purpose of the rule, stating that it rests upon the "spirit of fair play which, perhaps more than anything else, distinguishes Anglo-American law from the jurisprudence of other nations." *Id.* at 333-34. We went on to state that the rule is based on the principle that "a finding of guilty should rest upon proof beyond a reasonable doubt, that the accused committed the exact offense for which he is being tried." *Id.* at 334. *See also Leaks v. State,* 339 Ark. 348, 5 S.W.3d 448 (1999); *Hickey v. State*, 263 Ark. 809, 569 S.W.2d 64 (1978).

The right to have one's conviction rest upon proof beyond a reasonable doubt is a requirement of due process, a right arising from the common law, and is a right which has its origins in ancient times. *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Like-

wise, due process requires that the accused enjoy the presumption of innocence, which this court has stated "is a fundamental right in the American system antedating any constitution and an essential of due process of law." *Williams v. State*, 259 Ark. 667, 672, 535 S.W.2d 842 (1976). *See also Anderson v. State*, 353 Ark. 384, 108 S.W. 3d 592 (2003). This presumption puts at issue the truth and credibility of all of the evidence offered against an accused. *Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002).

Where the State is allowed to introduce evidence to convince the jury that the accused has a criminal disposition, and that on that basis, he or she is guilty, both the requirement of proof beyond a reasonable doubt and the requirement that the accused be presumed innocent are violated and bypassed. We once accurately stated:

> It was appropriate for the circuit judge to be extremely cautious about the admission of such testimony, as any real doubt about the question should be resolved in favor of the accused. We have zealously guarded the rights of accused persons to have the state's evidence strictly confined to the issues to insure that no one is convicted because he has committed offenses other than that for which he is on trial or because he is of bad character and addicted to crime.

*Tarkington v. State*, 250 Ark. 972, 980, 469 S.W.2d 93 (1971). However, we have now digressed so far that we recently stated the idea as "any circumstance that ties a defendant to the crime *or raises a possible motive* for the crime is independently relevant and admissible." *Jackson v. State*, 359 Ark. 297, 305, 197 S.W. 3d 468, 474 (2004) (emphasis added). In this sentence one can barely discern the deteriorated, skeletal remains of the once fundamental and familiar principle.

First, it should be understood that the rule in all its long history never excluded evidence of former wrongs or crimes where the former wrongs or crimes constituted relevant evidence of an element in a charged crime, unless the prejudicial harm outweighed the probative value. However, the tired recitation of a conclusory phrase that the evidence is independently relevant as to motive or intent in the place of analysis, as well as a failure to determine whether intent or motive is even at issue makes the rule a nullity. Worse, by this approach, we not only lose the ancient protection of the rule, but also the ancient protections of proof beyond a reasonable doubt and the presumption of innocence are compromised.

In *Dunn v. State*, 2 Ark. 229, 243-44 (1840), this court stated that evidence of the commission of a crime or felony "wholly unconnected with that for which" an accused is on trial is inadmissible, a premise the court accepted as "unquestionable." *Id.* However, the court also stated:

> But in cases where the *scienter* or the *quo animo,* is requisite to, and constitutes a necessary and essential part of the crime with which the prisoner is charged, and proof of such guilty knowledge, or malicious intention is indispensable to establish his guilt, in regard to the transaction in question, as in cases of forgery, murder and the like; testimony of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent, is competent legal testimony to go to the jury, notwithstanding they may in the law constitute a distinct crime.

*Dunn*, 2 Ark. at 243-44. This court noted that in the case of murder, former "grudges and antecedent menaces may be proved to show the prisoner's motives against the deceased." *Dunn*, 2 Ark. at 244. Under *Dunn*, unless the other crime establishes an element of the crime charged, it is inadmissible. In *Billings v. State*, 52 Ark. 303, 309, 12 S.W. 574 (1889), we stated:

> The facts laid before the jury should consist exclusively of the transaction that forms the subject of the indictment, and matters relating thereto. To enlarge the scope of the investigation beyond this would subject the defendant to the dangers of surprise against which no foresight might prepare and no innocence defend. Under this rule it is generally improper to introduce evidence of other offenses; but if facts bear upon the offense charged, they may be proven, although they disclose some other offense. The test of admissibility is the connection of the facts offered, with the subject charged.

Again, if the evidence of other wrongs or crimes constitutes evidence of the crime charged, then such evidence is admissible.

> In *State v. DuLaney*, 87 Ark. 17, 22-23, 112 S.W. 158 (1908), we stated:

> The principle of evidence that offenses or acts similar to the one charged may be competent for the purpose of showing knowledge, intent or design is as throughly established as the general prohibition

that other crimes or offenses cannot be shown in evidence against a defendant charged with a particular crime. While the principle is usually spoken of as being an exception to the general rule, yet as a matter of fact, it is not an exception; for it is not proof of other crimes as crimes, but merely evidence of other acts, which are from their nature competent as showing knowledge, intent or design, although they may be crimes, which is admitted. In other words, the fact that evidence shows the defendant was guilty of another crime does not prevent it being admissible when otherwise it would be competent on the issue under trial.

In other words, to be admissible, the evidence must be competent proof of an issue actually being tried. It must be independently relevant to prove an element of the crime being tried. In *Haire v. State*, 340 Ark. 11, 16, 8 S.W.3d 468 (2000), we first made the vague statement that "[t]he test for establishing motive, intent, or plan as a Rule 404(b) exception is whether the evidence of the other act has independent relevance." *See also Morgan v. State*, 359 Ark. 168, 195 S.W. 3d 889 (2004); *Barrett v. State*, 354 Ark. 187, 119 S.W. 3d 485 (2003); *McCoy v. State*, 354 Ark. 322, 123 S.W.3d 901 (2003); *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003); *Burmingham v. State*, 342 Ark. 95, 27 S.W. 3d 351 (2000). As already noted, the rule has now been reduced to "any circumstance that ties a defendant to the crime *or raises a possible motive* for the crime is independently relevant and admissible." *Jackson, supra* (emphasis added). This court in *Alford, supra,* warned against broad statements such as the court now embraces. At the time, the error this court was concerned about was citing the rule as only recency and similarity. We stated further that if such a test were applied, "the result would be to deprive the accused of much of the protection that the rule is intended to provide." *Alford,* 223 Ark. at 335. The problem is not just the words of the test now stated by the court in recent cases, although they are broad and barely sufficient. The problem is in failing to analyze the question of independent relevance. We stated in *Alford* that "[t]he issue of intent is *theoretically* present in every criminal case, and for that reason it is here that we are most apt to overlook the basic requirement of independent relevancy." *Alford,* 223 Ark. at 336 (emphasis in the original). We also stated that "[w]hat has happened is that the emphasis has shifted from evidence *relevant* to prove intent to evidence *offered for the purpose of proving intent,* by

showing that the defendant is a bad man." *Id.* (emphasis in the original). We first used the term independent relevance in *Alford, supra,* stating:

> We have repeatedly rejected unfounded appeals to the protection of the basic rule of exclusion. If other conduct on the part of the accused is independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible, with a proper cautionary instruction by the court.

*Alford,* 223 Ark. at 334.

To be independently relevant the evidence must be proof of the "main issue." *Morgan v. State,* 308 Ark. 627, 629, 826 S.W.2d 271 (1992). This means that the evidence of the prior conduct is relevant to proof required in the case in which it is presented even though it may also involve proof of another offense. *Price v. State,* 268 Ark. 535, 538, 597 S.W.2d 598 (1980). In *Dunn, supra,* this court stated that while evidence of prior incidences of grudges or threats against a murder victim may be admissible as proving intent in the trial for the murder of that victim, evidence of a distinct murder or other felony committed against a different person at a different time which is wholly unrelated to the murder in the case at trial is not admissible. In *Alford,* the prosecution offered testimony of a woman who suffered an attempted rape by Alford under very similar circumstances within two to three weeks of raping the victim. In the crime for which Alford was on trial, he was accused of threatening the victim with a knife, dragging her from the building, and raping her. With respect to the other victim, Alford was accused of using a gun instead of a knife and taking the second victim to a another place where he attempted to rape her. This court held that the evidence of this other victim was improperly admitted. This court stated:

> In the case at bar it seems to us idle to contend that there was any real question about Alford's intent, concerning which the jury needed further enlightenment . . . The jury's problem was to determine whether the acts described by the prosecutrix took place; if so, their motivation is not open to doubt. The earlier attack upon Mrs. Austin could have no conceivable pertinence except to brand Alford as a criminal, which is just what the State is not allowed to do . . . Nor could this deadly prejudice be removed by the instruction confining Mrs. Austin's testimony to the issue of intent.

*Alford*, 223 Ark. at 338–39. Alford would have been charged under Ark. Stat. Ann. § 41-3401 (1947), which defined rape as carnal knowledge by force without consent.

S.P.B. testified that upon entering Davis's office he "attacked" her "right when we walked in." She said that "it was not even a split second, just enough for me to get right inside the door." She stated that Davis physically grabbed her three times before he caught her and on the fourth attempt, held her, touching her on her "butt and my breast and over my stomach . . . ." She further testified that over the course of this, Davis made a number of extremely vile proposals of sexual conduct including the involvement of a third person. She also testified that Davis struggled with her, tried to put her hands behind her back, and that he tried to lay her over a table.

Ridout testified of an incident when she was alone with Davis in a car, and that Davis "reached his arm past me, right across here, right across my frame. Right across my chest, which would be my breast." She testified that Davis did not touch her, but that she believed that he was about to touch her. This conduct does not involve physical assaults as S.P.B. alleged in her incident. The element of force is missing. On that basis, its similarity to the charged crime, as well as the lesser-included offense, is missing. The similarity that the State alleged was that Davis is a sexual predator and that his actions earlier with Ridout show that he acted in conformity with this character in the attack on S.P.B. The evidence of the incident with Ridout was inadmissible in this case.

The sad thing is that the State had ample evidence on which to try Davis. The jury clearly believed S.P.B. However, this case should be reversed and remanded for a new trial.