

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-14-1047

| | | |
|---|---|---|
| | | **Opinion Delivered** September 9, 2015 |
| JIMMY EUROPE | APPELLANT | APPEAL FROM THE SEVIER COUNTY CIRCUIT COURT [No. CR-13-77] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE TOM COOPER, JUDGE |
| | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

After a jury trial in the Sevier County Circuit Court, appellant Jimmy Europe was convicted of second-degree sexual assault and sentenced to ten years' imprisonment. On appeal, he challenges the sufficiency of the evidence supporting the conviction. We affirm.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Davis v. State*, 362 Ark. 34, 39, 207 S.W.3d 474, 479 (2005). We affirm a conviction if substantial evidence exists to support it. *Id.*, 207 S.W.3d at 479. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*, 207 S.W.3d at 479.

A person commits sexual assault in the second degree by engaging in sexual contact with another person by forcible compulsion. Ark. Code Ann. § 5-14-125(a)(1) (Repl. 2013). Forcible compulsion is defined as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5-14-101(2) (Repl. 2013). "Sexual

contact" is defined as "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(10) (Repl. 2013).

The record reveals that on July 2, 2013, the victim, Tanessa Watson, returned to her apartment after work around 1:30 a.m. Watson shared the apartment with her friend Valerie Bell, who was also home in her bedroom. Around 3:00 a.m., Europe and JaMarcus Hendrix came to the apartment. According to the victim, Bell was in a relationship with both men. The victim., Europe, and Hendrix were in the kitchen drinking gin and consuming Xanax. At one point, Europe touched the victim's arms, rubbed her legs, and asked her to have sex with him. She testified that she pushed Europe back and said no. She stated that she texted Bell, who came into the kitchen and asked the men to leave, and they did.

Some time later, Europe knocked on the door, came inside, and sat down with the victim on the couch. She testified that he again asked her to have sex and that he showed her his penis. She said that she told Europe no. Thereafter, Bell, Hendrix, and Europe left the apartment. However, Europe returned, asking the victim again to have sex. According to the victim, Europe jumped on top of her and pinned her on the couch. She said that she tried to push him off of her but that she was unable to move because his knee was pressing against her trying to open her legs. She said that he kissed her, and she bit his lip, to which he responded, "Damn, I like it rough." Then he pulled her shirt down and sucked on her breast. She also testified that he pulled her hand to his penis, which he had exposed, but that she "yanked" her hand back. She stated that she was trying to text Bell during the encounter but that Europe took her phone and

SLIP OPINION

threw it. When Bell returned to the apartment, Europe jumped up off the couch, and he walked to the bedroom with her (Bell), where he spent the night. The victim said that she went to work later that day, where she told a coworker and her boss about the incident. The victim's boss called the police, and she went to the police station to give a statement.

Captain Scott Simmons of the DeQueen Police Department testified that on July 2, 2013, he and another officer went to Europe's workplace. As the officers approached the personnel office, Simmons said he saw a man, who was later identified as Europe, look at the officers and run away. Simmons testified that Europe was later apprehended and brought in for questioning. He gave recorded and written statements. In the recorded statement, he said that he was trying to have sex with Watson and that they kissed. He admitted to "grabbing her titties" through her shirt when he was on top of her. He denied pulling his pants down and denied having sex with her, stating that he had sex with Bell that night. He said that Watson had "come on" to him in the past, stating that she had given him a "hand job" and that she and her sister had tried to have a "threesome" with him. He stated that he was "just chilling with [Watson], just kissing, flirting, drinking, just chilling like we usually do every other weekend." He stated that Watson made up the incident because he had "whooped her boyfriend" and "women do anything to get a revenge on a man."

In his written statement, Europe stated that he was "flirting with [Watson]." And when Bell left with Hendrix, he (Europe) was "trying to fxxk [Watson]." He wrote that he "end up getting seen by [Bell], so [Bell] was mad but eventually got over [it]. When it was said and done, I ended up sleep [sic] with [Bell]. (Spend the night)."



Europe argues that the evidence was insufficient to convict him of second-degree sexual assault because the State failed to establish the elements of sexual contact and forcible compulsion. He contends that the testimony of Watson is "inherently improbable, physically impossible, and clearly unbelievable" and that the jury likely convicted him based on his lifestyle—not whether he actually sexually assaulted her. We disagree.

The victim testified that Europe jumped on top of her, used his body to pin her down on a couch, used his leg to try to pry her legs open, and pulled down her shirt and sucked on her breast. She testified that he grabbed her hand and pulled it to his penis, which he had exposed. When Europe tried to kiss the victim, she bit him on the lip, to which he responded, "Damn, I like it rough." She said that she told Europe no and tried to fight him off but that she could not move. Europe did not stop until Bell entered the room.

The victim's testimony clearly established the elements of sexual contact and forcible compulsion used by Europe. And this court has recognized that the uncorroborated testimony of a rape victim is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *Estrada v. State*, 2011 Ark. 3, at 5, 376 S.W.3d 395, 398. The principle that a victim's uncorroborated testimony constitutes substantial evidence to support a guilty verdict is likewise true with respect to sexual offenses other than rape. *Brown v. State*, 374 Ark. 341, 343, 288 S.W.3d 226, 229 (2008) (second-degree sexual assault).

While Europe claims that the alleged assault did not occur, the jury was not required to believe his self-serving testimony. *Id.* at 344, 288 S.W.3d at 230. And as for inconsistencies or credibility issues with regard to the vicitm's testimony, the jury was free to believe all or part of

her testimony and disbelieve Europe's assertions. *Id.* at 344–45, 288 S.W.3d at 230. Where the jury as trier of fact has given credence to inconsistent testimony, this court will not reverse unless the testimony is inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Id.* at 345, 288 S.W.3d at 230. These circumstances do not exist here. The victim testified that Europe committed the crime; there is no requirement of corroboration; and the credibility of the evidence and any inconsistencies therein were for the jury to resolve.

Although not required in this case, we note that there was other evidence introduced that supports the victim's testimony. In his recorded statement, Europe said that he was trying to have sex with her and that they kissed. He admitted to "grabbing her titties" through her shirt when he was on top of her. In his written statement, Europe stated that he was "trying to fxxk [Watson]." And finally, there was evidence that when approached by police officers at his place of employment the day of the incident, Europe fled. *Jones v. State*, 282 Ark. 56, 60, 665 S.W.2d 876, 879 (1984) (holding that the action of a suspect in fleeing from the scene of the crime is relevant to the issue of guilt, and such proof is proper even though the flight did not occur immediately after the crime). In sum, Europe's statements and flight of Europe corroborate the victim's version of events and demonstrate that her testimony was not inherently improbable, physically impossible, or clearly unbelievable as Europe suggests.

Because there was substantial evidence to support the jury's finding of guilt, the trial court did not err in denying Europe's motion for directed verdict challenging the sufficiency of the evidence. Therefore, we affirm.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

SLIP OPINION



*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.